Frank "Rocky" BARILLA; Lise Bryant Glancy; Cynthia Suzanne Knight; and Ragene Ann Fore, Plaintiffs–Appellants,

v.

Vicki ERVIN, Director of Elections for Multnomah County; Alan Davidson, Marion County Clerk; David Spriggs, Lane County Clerk; and Barbara Roberts, Secretary of State for the State of Oregon, Defendants–Appellees.

No. 87–4298.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1989.

Decided July 13, 1989.

As Amended Aug. 1, 1989.

Thomas A. Balmer, Portland, Or., for plaintiffs-appellants Frank "Rocky" Barilla, Lise Bryant Glancy, Cynthia Suzanne Knight, and Ragene Ann Fore.

Robert M. Atkinson, Asst. Atty. Gen., Salem, Or., for defendant-appellee Barbara Roberts.

Jane Ellen Stonecipher, Asst. Marion County Counsel, Salem, Or., for defendants-appellees Vicki Ervin, Alan Davidson, and David Spriggs.

Before SCHROEDER, POOLE and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Four Oregon voters brought this action challenging Oregon's 20–day registration cutoff on the grounds that it unconstitutionally burdens the right to vote and the right to travel. The district court granted summary judgment to the defendants. The plaintiffs have appealed to this court, and the defendants, citing intervening events, have sought to dismiss the appeal as moot. We affirm the district court's judgment as to plaintiffs Barilla, Fore, and Knight, and defendants Ervin, Davidson, and Roberts. As to plaintiff Glancy and defendant Spriggs, we vacate the district court's judgment and remand with instructions to dismiss the complaint as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

From 1975 until 1985, Oregon law permitted voters to register in person at any time up to and including election day. In 1985, the legislature passed a statute requiring voters to register no later than the day before election day; in addition, voters could register by mail no later than 12 days before election day. 1985 Or. Laws ch. 833, § 1. The legislature also required proof of residency for any voter registering less than 12 days before an election. *Id.* Defendant Secretary of State Roberts testified that these changes resulted both from the desire to avoid the administrative inconveniences associated with registering voters on election day and from the public concern with the integrity of the registration system that arose in connection with

the registration of large numbers of the followers of Bhagwan Shree Rajneesh. The legislature considered, but did not pass, a proposed 20–day cutoff for voter registration.

In 1986, the proposed 20–day cutoff was placed on the ballot as an initiative amending the state constitution. The proposed initiative was supported by a number of county clerks, but was opposed by defendant Roberts. The initiative passed by a considerable majority. The effect of the proposition was to amend Art. II, § 2 of the Oregon Constitution to read: "Every citizen of the United States is entitled to vote in all elections not otherwise provided for by this constitution if such citizen ... [i]s registered not less than 20 calendar days immediately preceding any election in the manner provided by law."

On March 14, 1987, plaintiff Lise Bryant Glancy moved from one address in Lane County to a new address in the same county. On March 20, 1987, she appeared personally at the Lane County elections office in order to reregister. However, she did not vote in the March 31, 1987 election because it was her understanding that she was not eligible to do so because of the 20–day cutoff.

During the last week of February 1987, plaintiff Frank "Rocky" Barilla, at the time a member of the Oregon state legislature, moved from one address within Marion County to a new address in the same county. On March 16, 1987, he appeared personally at the Marion County Clerk's Office of Elections in order to reregister. At that time, he requested an absentee ballot for the March 31 election. Defendant Davidson denied Barilla's request to vote at either the old address or the new address, citing the 20–day registration cutoff.

In approximately November of 1986, plaintiff Ragene Ann Fore moved from one address in Marion County to another address within the same county. Fore knew that she would have to reregister, and eventually she obtained a reregistration form and mailed it in. However, the form was received on March 11, 1987, one day after the registration cutoff. Fore stated that she was unaware of the 20–day registration deadline. She did not vote in the March 31 election because it was her understanding that she was ineligible to do so.

Plaintiff Cynthia Suzanne Knight had never previously been registered to vote before sending in a registration form in March 1987. The form was received by the Multnomah County elections office on March 12, 1987, two days after the registration cutoff. She did not vote in the March 31, 1987 election because it was her understanding that she was ineligible to do so.

On March 20, 1987, plaintiffs filed this lawsuit, alleging that the 20–day registration cutoff violates the equal protection and due process clauses of the Fourteenth Amendment, and that the defendants' refusal to permit the plaintiffs to vote violates 42 U.S.C. § 1983. They sought declaratory and injunctive relief, but did not assert a claim for damages. The action was brought individually, and not as a class action.

On March 26, 1987, a hearing was held concerning plaintiffs' motion for a preliminary injunction. At the hearing, defendant Roberts testified that, although she thought that there was no problem of fraud under the old same-day registration system, there were administrative and economic benefits to the new system. She also testified that the problems associated with the followers of Bhagwan Shree Rajneesh led to the public perception that the pre–1986 system created opportunities for fraud. Although she had opposed the 1986 initiative, she agreed that the restoration of public confidence was necessary and worthwhile.

Defendant Vicki Ervin, Director of Elections for Multnomah County, testified concerning the use of "memorandum cards" as a means of confirming accurate voter registration. Under the current system, cards are mailed out to all voters registered by the cutoff date. If the post office finds that the person listed on the card is not at the specified address, it will return the card as undeliverable. Ms. Ervin testified that

it takes about 10 days for a card to be returned as undeliverable. Since the "poll books" listing registered voters are distributed to the precincts six to seven days before an election, this gives the elections office three days to check mail verifications.

Memorandum cards were also used as a registration check before the 1986 amendment was passed. The defendants presented evidence that, without the 20–day cutoff, a number of memorandum cards were returned as undeliverable only after the election had already taken place. Approximately 200 cards were returned in Multnomah County after the 1986 general election. In Marion County, 65 cards were returned as undeliverable after the 1986 election. Six separate contests in that election in Marion County were decided by fewer than 21 votes. Approximately 200 cards were returned in Lane County after the 1986 election. The defendants thus asserted that the 20–day cutoff was necessary to allow adequate time to conduct mail verifications.

Both defendant Ervin and defendant Davidson acknowledged that a returned memorandum card did not necessarily indicate fraud or that an ineligible voter had voted. Seizing upon this point, the plaintiffs argued that the defendants had presented no evidence that there was fraud under the old system. The defendants also pointed to the testimony of Daniel Burk, Director of Elections for Benton County, (a nonparty in this case) that there were no problems with fraud or administration under the old same-day system. Mr. Burk also testified that he thought the 20–day cutoff would reduce voter registration.

On March 27, 1987, the plaintiffs' motion for a preliminary injunction was denied. On April 30, all defendants moved for summary judgment. The plaintiffs cross-moved for summary judgment on June 15. On August 6, 1987, Magistrate George Juba recommended that the plaintiffs' motion for summary judgment be denied and that the defendants' motions for summary judgment be granted. No objections to the magistrate's report were timely filed. The

district court held that this failure relieved it of its obligation to give the record *de novo* review. Finding no error, the district court adopted the findings and recommendations of the magistrate on September 25, 1987. Judgment dismissing the complaint was formally entered on September 29, 1987. A timely notice of appeal was filed on October 26, 1987.

## STANDARD OF REVIEW

The district court incorrectly concluded that the failure to file timely objections to the magistrate's report relieved it of its obligation to give the record *de novo* review. In the Ninth Circuit, such a failure to file objections only relieves the trial court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo*. *Britt v. Simi Valley Unified School Dist.*, 708 F.2d 452, 454 (9th Cir.1983). *Britt* also held that failure to file objections does not bar the parties from appealing the district court's conclusions of law. *Id.* at 454–55. Because a motion for summary judgment raises a purely legal issue, *see United States v. One 1980 Mercedes Benz 500 SE*, 772 F.2d 602, 604 (9th Cir.1985), *de novo* appellate review of the district court's order in this case has not been waived by the failure to file objections to the magistrate's report.

## DISCUSSION

### A.  *Mootness.*

The issue of mootness has been raised by the appellees both in their briefs and in a separate motion to dismiss this appeal. Appellees' claim of mootness is based on two arguments. First, appellees point out that the March 31, 1987 election has passed, and the plaintiffs are registered to vote. Second, appellees argue that new amendments to the Oregon election laws have made it unlikely that the claims asserted below will recur, and that therefore this case does not fall within the narrow exception for controversies that are "capable of repetition, yet evading review." Specifically, the appellees point out that on September 27, 1987, certain amendments to

the Oregon election laws became effective. In particular, provisions were enacted allowing all persons who move within 40 days prior to an election to vote without having to reregister. Or.Rev.Stat. §§ 247.-320, 247.330. The appellants resist the claim of mootness on several grounds. First, the appellants argue that nothing has occurred since the entry of judgment on September 29, 1987 that would render this appeal moot. Second, they argue that the appellees may only raise the issue of mootness in their appeal briefs, not in a separate motion. Third, the appellants argue that this controversy is indeed "capable of repetition, yet evading review."

■ The appellants' first two arguments overlook the fact that mootness is a jurisdictional defect. Thus, this court may not decide the merits of a moot case, regardless of whether it was mooted before or after the entry of judgment. Furthermore, the fact that mootness is a jurisdictional defect means that it can be raised at any time either by the parties or by the court acting *sua sponte*. *See Taxpayers for Vincent v. City Council*, 682 F.2d 847, 849 n. 1 (9th Cir.1982), *rev'd on other grounds*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Therefore, this court cannot be divested of its obligation to consider the issue of mootness on the grounds

that the timing or manner in which a party has raised the issue is somehow procedurally improper.[1]

■ Since the March 31, 1987 election has passed and the plaintiffs have registered, the critical issue is whether this case falls within the exception for controversies that are "capable of repetition, yet evading review." [2] There are two requirements for this exception in cases that have not been certified as class actions: "(1) the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [must be] a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975). *See also Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982); *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 774, 98 S.Ct. 1407, 1414, 55 L.Ed.2d 707 (1978).

The first criteria is clearly satisfied in this case; the district court itself did not enter judgment until several months after the March 31 election had taken place. The key issue is whether there is a "reasonable expectation" that these claims will arise again with respect to these plaintiffs.[3] In

1. Furthermore, appellants' argument that the issue of mootness may only be raised in the appeal briefs overlooks the fact that the appellees did in fact raise this issue in their briefs.

2. The fact that the plaintiffs have brought suit solely on their own behalf and have only requested injunctive and declaratory relief ensures that their claims will be moot unless they can fit within this exception. *See Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (where plaintiff had neither sought damages nor sought to represent a class, case was mooted by the fact that injunctive relief would no longer provide any benefit to the plaintiff).

3. In *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 610–11, 98 L.Ed.2d 686 (1988) (Scalia, J., dissenting), Justice Scalia argued that the Court's prior cases had, in the area of election law, dispensed with this second "same-party requirement" entirely. However, examination of these cases reveals no such categorical exception to the usual mootness rules. First, many of the election law cases were *class actions. See, e.g.,*

*Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974); *Brown v. Chote*, 411 U.S. 452, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973); *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). Under *Sosna v. Iowa*, 419 U.S. 393, 401–02, 95 S.Ct. 553, 558–59, 42 L.Ed.2d 532 (1975), class actions are *not* subject to the requirement that the dispute be capable of repetition as to the named plaintiffs. Second, it seems clear that the remaining election law cases satisfied the "reasonable expectation" of repetition requirement, at least as it has been interpreted by the majority in *Honig. See, e.g., Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Moore v. Olgilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). *See also Sosna*, 419 U.S. at 399, 95 S.Ct. at 557 (noting that "the defendants in [*Moore*] could be expected again to act contrary to the rights asserted by the particular named plaintiffs involved"); *Speer v.*

*Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 601–04, 98 L.Ed.2d 686 (1988), the Supreme Court stated that, in order to satisfy the "capable of repetition" test, the plaintiffs need only show that it is reasonable to expect that they will engage in conduct that will once again give rise to the assertedly moot dispute; they need not show that there is a "demonstrated probability" that the dispute will recur. In the court's words: "Our concern in [cases] involving potentially moot claims [has been] whether the controversy was *capable* of repetition and not ... whether the claimant had demonstrated that a recurrence of the dispute was more probable than not." 108 S.Ct. at 602 n. 6 (emphasis in original).

■ Although the standard for the "capable of repetition" test is thus not a very demanding one, it is nonetheless clear that the claim asserted by plaintiff Glancy is incapable of repetition. Glancy challenged the 1986 Amendment on the grounds that it disenfranchised her as a result of her having changed addresses. It is clear, however, that under current Oregon law, Glancy would under similar circumstances now be entitled to vote. *See* Or.Rev.Stat. § 247.320 (allowing persons who change addresses within a county within 40 days prior to an election to vote without having to reregister); *see also id.* at § 247.300 (similar provisions for persons who move between counties). The statutory amendments have thus rendered Glancy's claim incapable of repetition. *See Hall v. Beals,* 396 U.S. 45, 48–49, 90 S.Ct. 200, 201–02, 24

L.Ed.2d 214 (1969) (intervening statutory amendments rendered moot plaintiffs' challenge to Colorado's six-month residency requirement for voter registration).[4]

The appellants make three arguments in support of their contention that this case is not moot with respect to any of the plaintiffs. First, they argue that all of the plaintiffs would still be disenfranchised if they for some reason became deregistered or if they moved again but failed to obtain the special certificate of registration provided for in Or.Rev.Stat. § 247.320. While this may be so, this is simply a different situation from that which confronted Glancy below. She was disenfranchised, not by her negligent failure to invoke available procedures, but *solely* because she moved within the 20–day cutoff period.[5] The fact that Glancy may, at some point in the future, have some different sort of dispute with the Lane County Clerk does not save from mootness the particular claim she has asserted below.

■ Second, the appellants argue that, to the extent the statutory amendments seek to blunt the impact of the 1986 constitutional amendment, they violate the state constitution. This argument is without merit. The 1986 initiative merely amended the constitution to provide that a citizen is eligible to vote if he or she is registered "not less than 20 calendar days immediately preceding any election *in the manner provided by law.*" Or. Const., Art. II, § 2 (emphasis added). Thus, nothing in the

---

*City of Oregon,* 847 F.2d 310, 312 n. 3 (6th Cir.1988) (noting that the voters who were plaintiffs in *Storer* might again have been affected by the statute at issue). Indeed, it seems clear that Justice Scalia claims that a categorical exception exists for election cases only because the finding of no mootness in those cases could otherwise be justified only by reading the "reasonable expectation" of repetition requirement in the relatively lax fashion adopted by the *Honig* majority. *See Honig,* 108 S.Ct. at 610 (Scalia, J., dissenting).

4. Similarly, these statutory amendments render irrelevant the Attorney General Opinion that the appellants seek to add to the record on appeal. Oregon Attorney General Opinion No. 6051 (Oct. 8, 1986) concludes that, under the law as it then existed, the proposed 1986 initiative would

disenfranchise anyone who moved within 20 days prior to an election. This is *not* the current law, and the opinion is thus of no value to this appeal. Accordingly, the motion to supplement the record by adding the opinion is denied.

5. Her situation thus contrasts with that of plaintiff Barilla. Although Barilla moved less than 40 days prior to the March 31, 1987 election and thus would, under comparable circumstances, be entitled to vote under Or.Rev.Stat. § 247.320, it is also true that he moved *before* the 20–day cutoff period began. Thus, Barilla was disenfranchised, not by his having moved, but by his willful or negligent failure to invoke available procedures. As set forth below, it seems reasonable, under *Honig,* to expect that Barilla may engage in similar conduct in the future.

state constitution prohibits the legislature from providing that an already registered voter who changes addresses may nonetheless vote without having to reregister. Such a person is indisputably registered "in the manner provided by law."

■ Third, the appellants argue that the statutory amendments cannot render this case moot inasmuch as the legislature may later decide to repeal them. In support of this proposition, they cite *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288–89, 102 S.Ct. 1070, 1074–75, 71 L.Ed.2d 152 (1982), in which the Court held that a void-for-vagueness challenge to a city ordinance had not been mooted by the repeal of the offending language. In *Mesquite*, however, the city had expressly announced its intention to reenact the offending language if the case was dismissed as moot. 455 U.S. at 289 n. 11, 102 S.Ct. at 1075 n. 11; *see also id.* at 296 n. 1, 102 S.Ct. at 1078–79 n. 1 (White, J., concurring in part and dissenting in part). In the present case, there is no indication whatsoever that the Oregon legislature intends to repeal the statutory amendments. In this regard, this case is closer to *Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969), in which the Court held that the plaintiffs' challenge to Colorado's six-month residency requirement for voter registration was mooted by the amendment of the offending law. *Cf. Princeton Univ. v. Schmid*, 455 U.S. 100, 103, 102 S.Ct. 867, 869, 70 L.Ed.2d 855 (1982) (holding that because Princeton had repealed regulations that the New Jersey Supreme Court had decided violated the state constitution, Princeton could not appeal this decision on federal grounds; the dispute was moot).

It thus seems clear that the enactment of the amendments to Oregon's election laws

has mooted the dispute between plaintiff Glancy and defendant Spriggs.[6] Accordingly, the judgment as to both of them is vacated, and the case is remanded to the district court with instructions to dismiss the complaint as moot with respect to these two parties.

■ As to the remaining plaintiffs and defendants, the dispute has not been mooted by the changes in Oregon's election laws. Only plaintiff Barilla's claim would also have been cured by the amendments, but for reasons noted earlier, this does not render his claim moot. *See* note 5, *supra*. As for plaintiffs Knight and Fore, both were disenfranchised by their negligent failure to register on time. Had the statutory amendments been in force at the time, they would not have prevented either plaintiff from being disenfranchised. This is true because the amendments do not apply to persons (such as Knight) who are completely unregistered when the 20–day cutoff period begins nor do they apply to those (such as Fore) who move more than 40 days prior to an election. The claims of both Knight and Fore are thus capable of repetition. Furthermore, given that they have been negligent once, it seems reasonable to expect, under *Honig*, that they may be negligent again if they move or if their registration lapses.[7]

The appellees argue that there is no reasonable expectation that the claims asserted below could recur inasmuch as these plaintiffs could only become deregistered by their own negligent or willful acts. There are several problems with this argument. First, the argument is simply a non sequitur in that it blurs the distinction between the mootness issue and the merits of this case. Plaintiffs Barilla, Fore, and Knight have already been disenfranchised

---

**6.** Because Glancy is the only one of the four plaintiffs who lives in Lane County, she is the only one who has standing to sue defendant Spriggs. Accordingly, the dismissal of Glancy as a plaintiff requires the dismissal of Spriggs as a defendant.

**7.** It is thus unnecessary to note that plaintiff Knight has recently moved and failed to reregister. Under *Honig*, the plaintiffs do not have to demonstrate that the dispute *will* recur. Ac-

cordingly, the motion to supplement the record on appeal to include Knight's affidavit attesting to her subsequent deregistration is denied. Only in extraordinary situations should the record on appeal be supplemented with material that was not before the district court. *See Ross v. Kemp*, 785 F.2d 1467, 1474 (11th Cir. 1986). Such extraordinary circumstances are not present here.

once by their negligent or willful acts. Thus, the fact that this may recur supports, rather than defeats, a finding of *no* mootness. Second, the argument is inconsistent with precedent. In *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973), the Court held that Jane Roe's challenge to Texas' abortion law had not been mooted by the termination of her pregnancy. As the Court acknowledged in *Honig*, it was reasonable "to assume that Jane Roe would again both have an unwanted pregnancy and wish to exercise her right to abortion." 108 S.Ct. at 602 n. 6. In reaching this conclusion, the Court focused solely on the possibility that Roe would again face an unwanted pregnancy; the Court did not analyze whether a subsequent pregnancy would be attributable to "willful or negligent" action on Roe's part. Accordingly, the claims of Barilla, Knight, and Fore are "capable of repetition, yet evading review." Therefore, they are not moot.

B. *Appellants' Constitutional Claims.*

■ The plaintiffs assert that Oregon's 20–day registration cutoff unconstitutionally burdens the right to vote. We note, however, that courts have repeatedly upheld, against similar challenges, registration cutoffs of even more than 20 days. *See Burns v. Fortson*, 410 U.S. 686, 687, 93 S.Ct. 1209, 1210, 35 L.Ed.2d 633 (1973) (upholding Georgia's 50–day registration cutoff);[8] *Marston v. Lewis*, 410 U.S. 679, 681, 93 S.Ct. 1211, 1213, 35 L.Ed.2d 627 (1973) (upholding Arizona's 50–day registration cutoff); *Dunn v. Blumstein*, 405 U.S. 330, 348–49, 92 S.Ct. 995, 1006, 31 L.Ed.2d 274 (1972) (striking down Tennessee's three-month residency requirement, but discussing with approval Tennessee's requirement of registration at least 30 days before an election); *Key v. Board of Voter Registration*, 622 F.2d 88, 90 (4th Cir.) (upholding South Carolina's 30–day registration cutoff), *cert. denied*, 449 U.S. 877, 101 S.Ct. 222, 66 L.Ed.2d 99 (1980).

Mindful of these precedents, the appellants nonetheless argue that *Burns* and *Marston* fully support their case. They contend that these cases established that strict scrutiny is the appropriate standard of review for evaluating registration cutoffs, and they further argue that the appellees in the present case did not make the type of "strong" showing of necessity that was made in *Burns* and *Marston*.

Although commentators have generally viewed *Burns* and *Marston* as strict scrutiny cases, *see* L. Tribe, *American Constitutional Law* 1452 n. 4 (2d ed. 1988); Sager, *Some Observations about Race, Sex, and Equal Protection*, 59 Tul.L.Rev. 928, 939–41 & n. 16 (1985); Comment, *Selecting the Appropriate Standard of Review for Equal Protection Challenges to Legislation Concerning Subsistence Benefits*, 53 U.Cin.L.Rev. 587, 588 (1984),[9] it is not altogether clear that this is a proper characterization of the two cases. The opinions in both cases are brief *per curiams* that do not specify the standard of review being applied. In *Marston*, the Court upheld Arizona's 50–day registration cutoff on the grounds that the evidence presented to the district court demonstrated that the cutoff was "necessary to permit preparation of accurate voting lists." 410 U.S. at 681, 93 S.Ct. at 1213. However, there is nothing in *Marston* other than this use of the word "necessary" to suggest that heightened scrutiny was being applied. No mention was made of a "compelling" state interest or least restrictive means analysis, both essential elements of strict scrutiny. *See Dunn*, 405 U.S. at 342, 92 S.Ct. at 1003. Indeed, as the dissent in *Marston* quite rightly points out, the Court was almost surely *not* requiring the least restrictive means in that it upheld the 50–day cutoff despite the fact that many of the problems necessitating such a cutoff were the result of the inefficient manner in which registration was conducted. *See Marston*, 410 U.S.

---

**8.** The Court in *Burns,* however, indicated that a 50–day registration requirement "approaches the outer constitutional limits in this area." 410 U.S. at 687, 93 S.Ct. at 1210.

**9.** At least one court has also viewed *Burns* and *Marston* as applying strict scrutiny. *See Auerbach v. Rettaliata,* 765 F.2d 350, 354 (2d Cir. 1985).

at 682–83, 93 S.Ct. at 1213–14 (Marshall, J., dissenting).[10]

Similarly, in *Burns*, the Court upheld Georgia's 50–day cutoff in a 1½ page *per curiam* that, like *Marston*, did little more than state that Georgia had shown the cutoff to be "necessary" to keep voter lists accurate. 410 U.S. at 687, 93 S.Ct. at 1210. Furthermore, as in *Marston*, the dissent in *Burns* makes it quite clear that the Court was not applying least restrictive means analysis. *See* 410 U.S. at 688–89, 93 S.Ct. at 1210–11 (Marshall, J., dissenting) (noting that it was possible to increase the size and efficiency of the registrar's office, so as to permit a shorter cutoff period). Therefore, it is far from clear that *Marston* and *Burns* stand for the proposition that strict scrutiny should be applied across the board to registration cutoffs.[11]

However, we need not resolve the question as to how properly to characterize the standard of review applied in *Burns* and *Marston*. We conclude that, however the standard is characterized, the appellees in this case have made a showing of necessity that is comparable to that found sufficient by the Supreme Court in *Burns* and *Marston*. In both of these cases, the Court

substantially deferred to the manner in which Georgia and Arizona chose to structure their elections offices and to verify the accuracy of registrations, concluding only that the 50–day cutoffs in both states were "necessary" to give the state sufficient time to verify lists.[12] That is, the Court only asked whether the state had allotted itself more time than was necessary to complete these tasks; it did not ask whether *other tasks* might have served the state's goals equally well in less time. Under this test, Oregon's 20–day cutoff is undeniably "necessary"; the uncontroverted evidence is that the mail verification of addresses cannot reasonably be conducted in less time.[13] Summary judgment for the defendants was therefore appropriate.

The appellants make a number of arguments in an attempt to show that *Burns* and *Marston* are distinguishable from this case. First, they argue that the defendants in this case failed to produce evidence of actual fraud under Oregon's prior system of same-day registration. However, the issue of whether there was actual fraud under the old system is really beside the point. The appellees correctly note

---

**10.** The relatively lax manner in which the Court reviewed the cutoffs in *Burns* and *Marston* has not been overlooked by commentators. Thus, while Professor Sager views these cases as applying "strict scrutiny," he also notes that Georgia's and Arizona's showing of "necessity" seemed to fall far short of what one would ordinarily think would be required under this rigorous standard of review:

This hardly seems the sort of showing that one would imagine as comprising the extraordinary justification for a constitutional wrong. Surely, fewer days could have sufficed if the states treated the prompt registration of voters as a sufficiently urgent objective to warrant the deflection of greater resources to a registration scheme that aimed towards dispatch.

Sager, *Some Observations about Race, Sex, and Equal Protection*, 59 Tul.L.Rev. 928, 940–41 (1985).

**11.** Nor does *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), support appellant's claim that strict scrutiny is the appropriate standard of review. *Dunn* involved a lengthy residency requirement that effectively applied only to individuals who recently arrived in the state. Indeed, the *Dunn* Court emphasized that strict scrutiny was appropriate inas-

much as the Tennessee statute impinged upon the fundamental right to travel; the statute distributed the franchise among Tennessee residents on the basis of whether they had recently moved from one jurisdiction to another. *Id.* at 338–42, 92 S.Ct. at 1001–03. By contrast, Oregon's brief registration cutoff period applies evenhandedly to all unregistered Oregonians, whether new arrivals or long-time residents.

**12.** We note, however, that nothing in *Burns* or *Marston* suggests that complete deference is appropriate. Indeed, the Court's comment that a "50–day registration period approaches the outer constitutional limits in this area," *Burns*, 410 U.S. at 687, 93 S.Ct. at 1210, suggests that the Court would not have been willing to accept an argument that a given state's unreasonably inefficient registration system required a lengthy registration cutoff period.

**13.** Indeed, we note that, even under standard strict scrutiny analysis, there are problems with appellants' position. While the appellants point to a number of alternatives that are less restrictive than the 20–day cutoff, they have preferred no evidence suggesting that these alternatives would be as effective in eliminating opportunities for fraud.

that, under *Munro v. Socialist Workers Party,* 479 U.S. 189, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986), Oregon is not required to wait until fraud becomes rampant before taking remedial action; the state has a sufficient interest in *preventing* future fraud. It seems clear that, regardless of whether there was fraud under the old system, the current system eliminates previously existing *opportunities* for error or fraud.

Second, the appellants argue that, unlike *Burns* and *Marston,* the registration cutoff at issue in this case is not the product of a "legislative judgment." They point out that Oregon's 20-day cutoff was enacted directly by the voters only after it had been rejected by the Oregon legislature in favor of a one-day cutoff. Thus, the appellants argue that, contrary to *Burns* and *Marston,* the Oregon legislature's judgment was that a 20-day cutoff was *not* necessary, and that therefore the cutoff is not justified. We reject this argument. In reviewing the validity of a statute, courts have consistently applied the same constitutional standards without regard to whether the statute was enacted by the legislature or directly by the people. *Citizens Against Rent Control v. City of Berkeley,* 454 U.S. 290, 295, 102 S.Ct. 434, 436, 70 L.Ed.2d 492 (1981); *Seattle School Dist. No. 1 v. State of Washington,* 473 F.Supp. 996, 1011–12 (W.D.Wash.1979), *aff'd in part, rev'd in part on other grounds,* 633 F.2d 1338 (9th Cir.1980), *aff'd,* 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982); *Massachusetts Teachers Ass'n v. Secretary of the Commonwealth,* 384 Mass. 209, 424 N.E.2d 469, 487 (1981); *see generally* 42 Am.Jur.2d *Initiative and Referendum* § 55 (1969).

▇ The appellants' attempts to distinguish *Burns* and *Marston* are thus unavailing. Accordingly, we conclude that the district court properly entered summary judgment for the appellees. However, we also note that, even if we did not find these cases controlling, there is an alternative ground of decision that requires affirmance of the district court in this case. This alternative ground is based upon the Su-

preme Court's decision in *Rosario v. Rockefeller,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973). *Rosario* was a class action challenging a New York statute that required voters who wished to vote in a party's primary to enroll in that party no later than 30 days prior to the preceding *general* election. Since New York held its presidential primary in June and its nonpresidential primary in September, the statute had the effect of requiring voters to register eight months in advance for a presidential primary, and eleven months in advance for a nonpresidential primary. The Court began its analysis by noting that the entire plaintiff class consisted of people who *could* have registered in time for the primary, but who for one reason or another failed to do so. 410 U.S. at 755 & n. 4, 93 S.Ct. at 1248 & n. 4. The Court held that this fact served to distinguish *Rosario* from those cases, such as *Dunn,* in which the Court had applied strict scrutiny. The Court stated that, in the latter cases, "the State [had] totally denied the electoral franchise to a particular class of residents, and there was no way in which the members of that class could have made themselves eligible to vote." *Id.* at 757, 93 S.Ct. at 1249. By contrast, the New York statute "did not absolutely disenfranchise the class to which petitioners belong—newly registered voters who were eligible to enroll in a party before the previous general election." *Id.* Thus, the Court concluded, to the extent that the plaintiffs' "plight can be characterized as disenfranchisement at all, it was not caused by [the statute], but by their own failure to take timely steps to effect their enrollment." *Id.* at 758, 93 S.Ct. at 1250. The New York statute did not constitute a ban on their ability to participate in the primary, "but merely a time limitation on when they had to act" in order to do so. *Id.* Therefore, the only question was whether this time limitation was so severe as to constitute an unconstitutional burden on the franchise. *Id.* at 760, 93 S.Ct. at 1251. In answering this question, the Court applied the rational basis test and upheld the statute.

Applying the principles of *Rosario* to the present case, we conclude that summary

judgment was properly entered for the defendants. Plaintiffs Barilla, Fore, and Knight were all disenfranchised by their willful or negligent failure to register on time. Therefore, as applied to them, the 1986 initiative does not "totally den[y] [the plaintiffs] the opportunity to vote," as was true in *Dunn*, 405 U.S. at 335, 92 S.Ct. at 999; *see also McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 806, 89 S.Ct. 1404, 1407, 22 L.Ed.2d 739 (1969) (strict scrutiny not required where plaintiffs failed to show either a suspect classification or that they were "absolutely prohibited from voting by the State."). Like the plaintiffs in *Rosario*, the three appellants in this case were not "absolutely disenfranchise[d]" by the challenged provision. 410 U.S. at 757, 93 S.Ct. at 1249. They could have registered in time for the March 31, 1987 election, but they failed to do so. What is at issue here is not a "ban" on the plaintiffs' right to vote, but rather, a "time limitation" on when the plaintiffs had to act in order to be able to vote. *Rosario*, 410 U.S. at 758, 93 S.Ct. at 1250. Accordingly, the burden imposed on these plaintiffs' right to vote is not "substantial" enough to require strict scrutiny. *See Socialist Workers Party v. Eu*, 591 F.2d 1252, 1260 (9th Cir.1978), *cert. denied*, 441 U.S. 946, 99 S.Ct. 2167, 60 L.Ed.2d 1049 (1979); *see also Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972) ("not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review"). The Oregon registration cutoff easily passes the rational basis test. The evidence proffered by the defendants concerning the time required to conduct mail verification of addresses establishes beyond dispute that the 20–day cutoff is rationally related to the legitimate state goals of preventing fraud and maintaining the accuracy of the voting lists.

The appellants, however, seek to distinguish *Rosario* and similar cases on the ground that those cases involved "access to the ballot" or associational rights, rather than the right to vote. This argument is without merit. First, the cases simply do not line up on the basis of whether they involve ballot access or voting rights. For example, the appellants overlook the fact that *McDonald* was a voting rights case, and yet the Court applied the rational basis test. In addition, the appellants incorrectly state that *Bullock*, a ballot access case, applied rationality review. In fact, the Court in *Bullock* expressly applied heightened scrutiny. *See* 405 U.S. at 144, 92 S.Ct. at 856. *See also Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) (applying heightened scrutiny in a ballot access case where the challenged restrictions were held to impose a heavy burden on associational and voting rights). Rather, as this court noted in *Eu*, the critical distinction is whether the challenged restriction imposes a "substantial" burden on the right to vote. 591 F.2d at 1260.[14]

Second, the Court has expressly rejected the type of sharp dichotomy the appellants suggest. *See, e.g., Anderson*, 460 U.S. at 786, 103 S.Ct. at 1568 ("the rights of voters and the rights of candidates do not lend themselves to neat separation") (quoting *Bullock*, 405 U.S. at 143, 92 S.Ct. at 856); *Williams v. Rhodes*, 393 U.S. 23, 30–31, 89 S.Ct. 5, 10–11, 21 L.Ed.2d 24 (1968) (noting that associational and voting rights are "different, although overlapping, kinds of rights."). Accordingly, we conclude that *Rosario* provides an alternative ground for affirming the district court's judgment.

### CONCLUSION

As to plaintiff Glancy and defendant Spriggs, the judgment is VACATED and the case is REMANDED with instructions to dismiss the complaint as moot. As to the remaining plaintiffs and defendants, the judgment is AFFIRMED. Costs are to be borne by appellants.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

---

**14.** This was the grounds on which the *Rosario* Court distinguished *Dunn*. *See* 410 U.S. at 757, 93 S.Ct. at 1249. The Court did not draw any distinction based on the type of rights involved.