**Robert P. BARRETT, Plaintiff,**

v.

**AMERICAN MEDICAL RESPONSE, N.W., INC., an Oregon corporation Defendant.**

**No. CIV.00–1539–ST.**

United States District Court, D. Oregon.

March 28, 2001.

Glenn Nathan Solomon, Solomon & Joiner, Portland, OR, for plaintiff.

## ORDER

KING, District Judge.

Magistrate Janice M. Stewart filed her Findings and Recommendation (# 16) on February 15, 2001. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). No objections have been timely filed. This relieves me of my obligation to give the factual findings *de novo* review. *Barilla v. Ervin*, 886 F.2d 1514, 1518 (9th Cir.1989) (citing *Britt v. Simi Valley Unified School Dist.*, 708 F.2d 452, 454 (9th Cir.1983)). Having reviewed the legal principles *de novo*, I find no error.

Accordingly, I ADOPT the Findings and Recommendation (# 16) of Judge Stewart. Defendant's motion to dismiss (# 7) is GRANTED in part and DENIED in part. Specifically, the Complaint is dismissed with prejudice, but AMR's accompanying request for attorney fees is denied.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

STEWART, United States Magistrate Judge.

### INTRODUCTION

Plaintiff, Robert P. Barrett ("Barrett"), asserts that defendant, American Medical Response N.W. Inc. ("AMR"), discriminated against him on the basis of his sex in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, et seq ("Title VII"). He alleges that AMR's "no beard" policy violates his civil rights and has caused him pain and suffering in the amount of $75,000.00. Furthermore, Barrett seeks an order from the court requiring AMR to eliminate its "no beard" policy. This court has jurisdiction over Barrett's Title VII claim pursuant to 28 USC § 1331.

Now before this court is AMR's Motion to Dismiss (docket # 7) For the reasons set forth below, the Complaint should be dismissed.

### STANDARDS

A motion to dismiss under FRCP 12(b)(6) will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir.1995); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). "The issue is not whether [the] plaintiff will ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Thus, the review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the nonmovant. *Buckey v. County of Los Angeles*, 968 F.2d 791,

794 (9th Cir.), *cert denied*, 506 U.S. 999, 113 S.Ct. 599, 600, 121 L.Ed.2d 536 (1992); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989).

### ALLEGATIONS

AMR is a corporation engaged in the business of providing ambulance services. Complaint, ¶ 2. Barrett is currently a paramedic employed by AMR and at all relevant times, had a full, thick beard. *Id*, ¶¶ 7–8. AMR requires paramedics to use a respirator for protection against tuberculosis and other airborne pathogens. *Id*, ¶ 9. Until March 1, 2000, employees were allowed to use respirators which could accommodate men with beards. *Id*, ¶ 10. After March 1, 2000, however, AMR instituted a policy that all paramedics were required to use a particular type of respirator, the N–95 respirator, which cannot be used by men with beards. *Id*, ¶ 11. Consequently, AMR instituted a "no beard" policy for all paramedics. *Id*, ¶ 12. After AMR instituted this policy, and, upon threat of termination, Barrett shaved his beard. *Id*, ¶¶ 15–16.

### DISCUSSION

AMR moves for summary judgment by arguing that Barrett has no cognizable legal basis for a claim of sex discrimination. It contends that facially neutral grooming standards which have a disproportionate impact on men do not constitute sex discrimination under Title VII and this action therefore should be dismissed. Furthermore, AMR moves for an award of attorney fees as it considers this a meritless claim.

#### I. Motion to Dismiss

##### A. Legal Standard

■ Title VII makes it unlawful "to discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 USC § 2000e–2(a)(1).[1] Courts recognize two

---

**1.** The relevant portion of Title VII provides that it shall be an unlawful employment practice for an employer:

bases on which Title VII plaintiffs may proceed: disparate treatment and disparate impact. *See Frank v. United Airlines, Inc.*, 216 F.3d 845, 853 (9th Cir. 2000). Disparate treatment is evident when an employer treats a person less favorably than others because of his or her sex. *Id.* Disparate impact is evident when an employer's practice is facially neutral, but in practice falls more harshly on one group than another. *Id.*

■ At oral argument, plaintiff's counsel clarified that this Title VII claim is based on disparate impact. Thus, in order to succeed, Barrett must show that a facially neutral business practice has a significantly adverse impact on a group protected by Title VII. *Connecticut v. Teal*, 457 U.S. 440, 446, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982). In such cases, once the plaintiff establishes a *prima facie* claim of disparate impact, the burden shifts to the defendant to show, if he can, that the practice is justified by "business necessity." *Lowe v. City of Monrovia*, 775 F.2d 998, 1004 (9th Cir.1985).

**B. *Analysis***

■ Barrett argues that because only men grow beards, AMR's "no beard" policy has a disproportionate adverse effect on male paramedics, and, as such, constitutes unlawful sex discrimination. AMR, however, characterizes the "no beard" policy as a neutral grooming standard which fails to trigger the protections of Title VII legislation.

As AMR points out, the great weight of authority in federal courts holds that

grooming and dress codes that distinguish between men and women are permissible and do not violate Title VII. For example, all circuit courts addressing the issue have held that an employer's regulation of its male employees' hair length does not violate Title VII. *See Harper v. Blockbuster*, 139 F.3d 1385 (11th Cir.), *cert denied*, 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998); *Tavora v. New York Mercantile Exch.*, 101 F.3d 907 (2d Cir.1996); *Barker v. Taft Broadcasting Co.*, 549 F.2d 400 (6th Cir.1977); *Earwood v. Continental Southeastern Lines, Inc.*, 539 F.2d 1349 (4th Cir.1976); *Knott v. Missouri Pac. R.R.*, 527 F.2d 1249 (8th Cir.1975); *Willingham v. Macon Tel. Pub. Co.*, 507 F.2d 1084 (5th Cir.1975); *Baker v. California Land Title Co.*, 507 F.2d 895 (9th Cir.1974), *cert denied*, 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1975); *Dodge v. Giant Food, Inc.*, 488 F.2d 1333 (D.C.Cir.1973) (*per curiam*). These courts conclude that hair length, and grooming standards in general, are either not within the statutory purview of Title VII or are, by their nature, *de minimis*. *See e.g., Tavora*, 101 F.3d at 908 (explaining that the rationale for these decisions "has generally been either that hair length policies are not within the statutory goal of equal employment .... or that such employment policies have only a *de minimis* effect").

The Ninth Circuit appears to follow the former reasoning. *Baker* found no violation of Title VII where the plaintiff, a male employee, was discharged for violating a policy which allowed long hair for female employees only. The Ninth Circuit con-

---

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for

employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 USC § 2000e–2(a).

cluded that "a private employer may require male employees to adhere to different modes of dress and grooming than those required of female employees and such does not constitute an unfair employment practice." *Baker*, 507 F.2d at 898. It explained that:

It seems clear from a reading of the [Civil Rights Act of 1964] that Congress was not prompted to add "sex" to Title VII on account of regulations by employers of dress or cosmetic or grooming practices which an employer might think his particular business required. The need which prompted this legislation was one to permit each individual to become employed and to continue in employment according to his or her job capabilities.

*Baker*, 507 F.2d at 896.

*Baker* also emphasized the Supreme Court's finding that the objective of Title VII is "to achieve equality of employment opportunities and remove barriers that have operated in the past." *Id* at 897, quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). *Baker* then remarked that "[o]bviously, it seems to us, the Court was not talking in terms of hair styles or modes of dress over which the job applicant has complete control. The Court was addressing itself to characteristics which the applicant, otherwise qualified, had no power to alter." *Baker*, 507 F.2d at 897. Hair length is not such an immutable characteristic.

Several years later, the Ninth Circuit held once again that an employer may impose different hair length requirements on men and women, and may require men but not women to wear neckties. It stated, without explanation, that "regulations promulgated by employers which require male employees to conform to different grooming and dress standards than female employees is not sex discrimination within the meaning of Title VII." *Fountain v. Safeway Stores, Inc.*, 555 F.2d 753, 754 (9th Cir.1977).

At least twice since *Fountain*, the Ninth Circuit has addressed Title VII challenges to "no-beard" policies. In *Bhatia v. Chevron USA, Inc.*, 734 F.2d 1382 (9th Cir. 1984), the plaintiff established a *prima facie* case of Title VII religious discrimination by proving that he had a *bona fide* belief that shaving his beard would be contrary to his Sikh religion, so informed his employer, and was subsequently removed from his position. The company policy in *Bhatia*, as here, required all employees who might be exposed to toxic gases to shave their beards in order to achieve an airtight face seal when wearing a respirator. Nonetheless, the Ninth Circuit affirmed summary judgment for the defendant because retaining the plaintiff in his former position, while he was unable to use a respirator safely, would cause the employer undue hardship. *Id.* In *Green v. Safeway Stores, Inc.*, No. C 96–03471 CRB, 1998 WL 898366 (N.D.Cal Dec 14, 1998), the court was willing to entertain the plaintiff's claim that a "no beard" policy constituted race discrimination under Title VII. The plaintiff argued that a high percentage of African–American males suffered from Psuedofollicutis Barbae ("PFB"), a skin condition that is worsened by shaving, and that defendant's "no-beard" policy therefore disproportionally excluded AfricanAmericans from employment. The court, however, found that the plaintiff's claim failed as a matter of law because the defendant's "no beard" policy had an exception for men suffering from PFB.

The Ninth Circuit has not had occasion to decide whether a "no beard" policy violates Title VII if it is not linked to religious or racial characteristics. Other courts, however, have uniformly found no violation

of Title VII for such a policy. For example, *Dripps v. United Parcel Serv. of Pennsylvania, Inc.*, 381 F.Supp. 421 (W.D.Pa.1974), *aff'd*, 515 F.2d 506 (1975), rejected a claim by a male welder under Title VII for sex discrimination when he was forced to resign or shave his beard. The court discerned "neither an intent to discriminate nor discrimination in fact. While it is true that only men can grow beards, it does not follow that a rule prohibiting beards amounts to sex discrimination." *Id* at 421. Similarly, *Rafford v. Randle E. Ambulance Serv., Inc.*, 348 F.Supp. 316 (S.D.Fla.1972), found that the defendant employer's "no-beard" policy did not constitute sex discrimination under Title VII, explaining: "This is a case of discrimination in favor of men who shave off their beards and mustaches. It does not involve proscribed sex discrimination." *Id* at 320.

Barrett acknowledges that the line cases involving hair length and beards ordinarily would foreclose his argument, but he contends that these cases are wrongly decided. Instead, he seeks to extend the reach of Title VII to include a grooming standard such as AMR's "no beard" policy that impacts only males. In support, he points to decisions holding that unequal application of grooming standards may constitute race discrimination in violation of Title VII. Similarly, Barrett contends that unequal application of grooming standards should implicate sex discrimination in violation of Title VII.

Barrett first relies on *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652 (6th Cir.1999), in which the plaintiff, an African–American woman, alleged disparate treatment on the basis of race in the application of her employer's personal grooming standards. The evidence revealed that all the female employees were subject to the same grooming standard and dealt with the same supervisors but the plaintiff alone was reprimanded for wearing her hair in a "ponytail" even though her white coworkers also wore their hair in "ponytails." This evidence was sufficient to create a question of fact as to whether the application of the employer's grooming policy was a pretext for the employer's discriminatory treatment of the plaintiff. The court concluded that because the plaintiff was subjected to an unwritten grooming standard "apparently developed specifically for [the plaintiff]," a jury could reasonably find that the defendant applied its grooming policy to the plaintiff in an unlawfully discriminatory manner "when it singled her out for different treatment." *Id* at 661.

*Hollins* does not assist Barrett. Barrett has not alleged, and has given no indication that he will prove, that AMR's "no beard" policy was applied in a discriminatory fashion with respect to Barrett and intentionally was not applied to other similarly situated employees. To the contrary, AMR's "no beard" policy is applied to all paramedics.

The second case cited by Barrett, *Adakai v. Front Row Seat, Inc.*, No. 96–2249, 1997 WL 603458 (10th Cir. Oct 1, 1997), also is distinguishable. There, the plaintiff, a Native American, alleged that he was fired because of his race and his long hair which was an integral part of his heritage. The Tenth Circuit affirmed the jury verdict in plaintiff's favor, but did not specifically address the defendant's argument that the plaintiff failed to establish a *prima facie* case under Title VII relating to his long hair. Thus, it appears that plaintiff's claim was affirmed based on an intertwining of both race and a grooming standard. *Id* at *1. Here, Barrett has not alleged that he wears a beard as part of his religion or ethnicity.

Were Barrett writing on a clean slate, he might stand a greater chance of success. After all, a beard is a biological

characteristic of men and a "no beard" policy imposes a burden only on men. As recently recognized by the Ninth Circuit, a "sex-differentiated appearance standard that imposes unequal burdens on men and women is disparate treatment that must be justified as a [*bona fide* occupational qualification]." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 855 (9th Cir.2000) (granting summary judgment to female flight attendants based on discriminatory maximum weight requirements). However, this court has found little support for the argument that discrimination "because of sex" includes facial hair worn by males in contravention of an employer's grooming regulations.

Barrett has not alleged a connection between his beard and a religious conviction, as in *Bhatia*, or between his beard and a medical inability to shave, as in *Green*. Rather, Barrett's beard is a mutable personal characteristic, much like hair length or a specific type of clothing such as a tie, that can be changed at will. As such, it falls under the rule of law expressed in *Baker* and similar decisions that employers may legitimately condition, within reason, their employee's appearance. As *Baker* pointed out, "since race, national origin and color [also protected by Title VII] represent immutable characteristics, logic dictates that sex is used in the same sense rather than to indicate personal modes of dress or cosmetic affects." *Baker*, 507 F.2d at 897; *see also Barker*, 549 F.2d at 401 ("The prohibition of sex discrimination must be interpreted in light of the purpose and intent of Congress in enacting the Civil Rights Act of 1964. Employer grooming codes requiring different hair lengths for men and women bear such a negligible relation to the purposes of Title VII that we cannot conclude they were a target of the Act").

As explained by the Fourth Circuit, "discrimination based on either immutable sex characteristics or constitutionally protected activities such as marriage or child rearing violate [Title VII] because they present obstacles to employment of one sex that cannot be overcome. On the other hand, discrimination based on factors of personal preference does not necessarily restrict employment opportunities and thus is not forbidden." *Earwood*, 539 F.2d at 1351, citing *Willingham*, 507 F.2d at 1091. "Employing this analysis, we hold that a sex-differentiated hair length regulation that is not utilized as a pretext to exclude either sex from employment does not constitute an unlawful employment practice as defined by Title VII." *Id.* Here, Barrett does not allege that AMR's sex-differentiated "no-beard" regulation was utilized as a pretext to exclude males from employment as paramedics. At most, the regulation excludes a subset of men, namely those who refuse to shave their beards, and favors those men who are clean shaven or choose to shave their beards. In other words, this case involves only discrimination in favor of men who shave off their beards.

In sum, AMR's "no beard" policy is a valid exercise of its discretion over its employees mode of appearance. *See Willingham*, 507 F.2d at 1092 ("Congress sought only to give all persons equal access to the job market, not to limit an employer's right to exercise his informed judgment as to how best to run his shop"). As such, Barrett's Title VII sex discrimination claim should be dismissed.

## II. *Attorney Fees*

■ AMR moves for an award of attorney fees on the grounds that Barrett's claim lacks any legal basis and is frivolous. Title VII provides for attorney fees to the prevailing party. 42 USC § 2000e–5(k). "[A] district court may in its discretion award attorney's fees to a prevailing de-

fendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). However, "[o]nly in exceptional cases did Congress intend that defendants be awarded attorney's fees under Title VII." *Mitchell v. Los Angeles County Superintendent of Sch.,* 805 F.2d 844, 848 (9th Cir.1986).

■ This is not an "exceptional" case that entitles AMR to attorney fees. While no court has gone as far as Barrett urges, his argument is not entirely specious. Grooming standards, when used as a pretext for discriminatory animus, can and do implicate Title VII. *See Hollins,* 188 F.3d at 661. Similarly, grooming standards may implicate Title VII if connected to race or religion. *See Bhatia,* 734 F.2d at 1383; *Green,* 1998 WL 898366 at *6. Furthermore, many courts, including *Baker,* appear to base their reasoning on the difference between mutable and immutable characteristics, but the line between the two has grown less distinct. The Ninth Circuit recently took pains to avoid making that distinction, stating that "we need not decide whether a rule or regulation that compels individuals to change or modify their physical structure or composition, as opposed to simply presenting themselves in a neat or acceptable manner, qualifies as an appearance standard." *Frank,* 216 F.3d at 855.

Thus, because Barrett reasonably seeks to extend the reach of Title VII, and has not raised a frivolous or "unreasonable" claim, AMR's motion for attorney fees should be denied.

### *RECOMMENDATION*

For the reasons stated above, AMR's Motion to Dismiss (docket # 7) should be GRANTED in part and DENIED in part. Barrett's Complaint should be dismissed with prejudice, but AMR's accompanying request for attorney fees should be denied.

### *SCHEDULING ORDER*

Objections to the Findings and Recommendation, if any, are due March 2, 2001. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, the response is due no later than March 19, 2001. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

Feb. 14, 2001.