Leslie FRANK; Pat Parnell; Susan Broderick; Carole Kirk; Nichkol Melanson; Sandra Huff; Diane Davis; Sharon Benjamin; Sharron K. Taylor; Bland Lane; Joan Balla Weaver; Donna Durkin; Ellen McCormick, Plaintiffs–Appellants,

v.

UNITED AIRLINES, INC., Defendant–Appellee.

Nos. 98–15638, 98–16687.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1999

Filed June 21, 2000

Edith J. Benay, San Francisco, California, for the plaintiffs-appellants.

Tom A. Jerman, Douglas E. Dexter, and David J. Reis, O'Melveny & Myers, San Francisco, California, for the defendant-appellee.

Before: REINHARDT, O'SCANNLAIN, and W. FLETCHER, Circuit Judges.

W. FLETCHER, Circuit Judge:

From 1980 to 1994, defendant United Airlines, Inc. ("United") required flight attendants to comply with maximum weight requirements based on sex, height and age. Failure to maintain weight below the applicable maximum subjected a flight attendant to various forms of discipline, including suspension without pay and termination. In 1992, plaintiffs filed this action on behalf of a class of female flight attendants to challenge these weight requirements.

Plaintiffs contend that by adopting a discriminatory weight policy and enforcing that policy in a discriminatory manner, United discriminated against women and older flight attendants in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900-12996. The district court granted summary judgment for defendant on all of plaintiffs' class and individual claims. We have jurisdiction under 28 U.S.C. § 1291. We reverse in part and affirm in part.

I

During the 1960s and early 1970s, the standard practice among large commercial

airlines was to hire only women as flight attendants. The airlines required their flight attendants to remain unmarried, to refrain from having children, to meet weight and appearance criteria, and to retire by the age of 35. *See Gerdom v. Continental Airlines, Inc.*, 692 F.2d 602, 605–06 (9th Cir.1982) (en banc) (collecting cases). Like other airlines, defendant United had a long-standing practice of requiring female flight attendants to maintain their weight below certain levels. After it began hiring male flight attendants in the wake of *Diaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385 (5th Cir.1971), United applied maximum weight requirements to both male and female flight attendants.[1] Flight attendants—a group comprised of approximately 85% women during the time period relevant to this suit—are the only employees United has ever subjected to maximum weight requirements. United abandoned its weight requirements for flight attendants in 1994.[2]

Between 1980 and 1994, United required female flight attendants to weigh between 14 and 25 pounds less than their male colleagues of the same height and age. For example, the maximum weight for a 5'7", 30–year–old woman was 142 pounds, while a man of the same height and age could weigh up to 161 pounds. A 5'11", 50–year–old woman could weigh up to 162 pounds, while the limit for a man of the same height and age was 185 pounds. United's weight table for men during this period was based on a table of desirable weights and heights published by the Metropolitan Life Insurance Company ("MetLife"). The comparable weight table for women was based on a table of maximum weights established by Continental Air Lines ("Continental"). A comparison of United's MetLife-derived limits for men to the Continental-derived weight limits for women reveals that United generally limited men to maximum weights that corresponded to large body frames for men on the MetLife charts but generally limited women to maximum weights that corresponded to medium body frames for women on MetLife charts.

The thirteen named plaintiffs worked for United as flight attendants while United's 1980–1994 weight policy was in effect. The named plaintiffs attempted to lose weight by various means, including severely restricting their caloric intake, using diuretics, and purging. Ultimately, however, plaintiffs were each disciplined and/or terminated for failing to comply with United's maximum weight requirements. In 1992, plaintiffs filed this employment discrimination action. They sought to represent plaintiff classes of female flight attendants for claims of sex and age discrimination, and they asserted various claims of individual discrimination.

On March 15, 1994, the parties stipulated to certify a plaintiff class for the Title VII sex discrimination claim and a plaintiff subclass of members over 40 years old for the ADEA age discrimination claim. On April 12, 1994, the district court certified a Title VII class comprised of

> all female flight attendants employed by United, currently or in the future, and all female flight attendants who were terminated, retired or resigned on or after January 5, 1989, as a result of their failure to comply with United's weight requirements[;]

and an ADEA subclass comprised of

> all female flight attendants, age 40 or above, employed by United currently, or

---

1. Although United historically had male flight attendants of Hawaiian descent on flights to Hawaii, those positions were treated as a separate category from other flight attendant positions, and United did not require the "Hawaiian stewards" to meet weight restrictions. Even after United began hiring men as flight attendants on non-Hawaiian flights and established maximum weight requirements for male flight attendants, the Hawaiian stewards remained exempt from weight requirements.

2. United suspended its weight program for approximately one year from September 1991 to September 1992. While that suspension may be relevant to damages, it is not relevant to the legal validity of plaintiffs' claims.

who were terminated, retired or re-signed after January 5, 1989 as a result of their failure to comply with United's weight requirements.

Neither party challenges the 1989 cutoff date for certification of the class.

The parties stipulated in the class certification order that individual notice would be sent to all members of the Title VII class and all potential members of the ADEA subclass. Although the order stated that the class was certified under Federal Rule of Civil Procedure 23(b)(2), as a so-called "injunction" class action, the notice actually sent satisfied the heightened notice required for a Rule 23(b)(3) "damages" class action, set forth in Rule 23(c)(2). The parties agree that the suit subsequently became a Rule 23(b)(3) class action after United abolished its weight program in 1994, thereby eliminating the need for injunctive relief. A form of notice, attached to the stipulation, provided that class members could "opt out" of the class certified for the Title VII claim. A second form of notice, also attached to the stipulation, provided that potential class members could "opt in" to the subclass certified for the ADEA claim.

Shortly after the class and subclass were certified, United suspended its weight policy "until further notice" and returned to service all attendants then held out of service under its weight policy. On August 16, 1994, United eliminated the weight policy entirely. In 1995, United offered to reinstate many class and subclass members who had been terminated under the weight policy. United did not require individuals accepting reinstatement to waive any potential claims against it arising from earlier discipline or termination.

The parties filed cross-motions for summary judgment on plaintiffs' class claim that United's weight policy discriminated against female flight attendants in violation of Title VII. On August 16, 1995, the district court denied plaintiffs' motion and granted summary judgment for United. The court held that any facial attack on the weight policy was foreclosed by claim preclusion resulting from *Air Line Pilots Ass'n Int'l v. United Air Lines, Inc.* (*"ALPA"*), 26 F.E.P. Cases 607, 1979 WL 34 (E.D.N.Y.1979), a decision resolving a facial challenge to an earlier United weight policy. The district court permitted plaintiffs to go forward under Title VII only on claims that United discriminated in the administration of its weight policy.

On February 26, 1997, the district court granted summary judgment for United on plaintiffs' remaining class claims of sex and age discrimination. The court held that plaintiffs had failed to present evidence of a pattern or practice of sex or age discrimination in the administration of the weight policy. The court further held that plaintiffs could not assert a disparate impact claim for sex discrimination based on United's administration of medical exceptions to the weight policy. Finally, applying the Tenth Circuit's decision in *Ellis v. United Airlines*, 73 F.3d 999 (10th Cir.1996), the court held that a disparate impact theory was not available under the ADEA.

On March 11, 1998, the district court entered an order granting summary judgment for United on all of plaintiffs' individual claims. The court decertified the age and sex discrimination classes and denied plaintiffs' application for costs.[3]

## II

We review *de novo* decisions granting summary judgment. *See Robi v. Reed*, 173 F.3d 736, 739 (9th Cir.1999). Viewing the evidence in the light most favorable to plaintiffs, we must determine whether genuine issues of material fact preclude summary judgment and whether the district court correctly applied the relevant substantive law. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998). Questions of claim and issue pre-

---

3. The district court did not, in most instances, separately address plaintiffs' FEHA claims, but the parties acknowledge that those claims rise or fall with plaintiffs' federal claims.

clusion are also reviewed *de novo*. *See C.D. Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir.1987).

## III

■ As a threshold matter, plaintiffs contend that the district court erred in holding that claim preclusion[4] foreclosed their facial attack under Title VII. "[A] valid final adjudication of a claim precludes a second action on that claim or any part of it." *Baker ex rel. Thomas v. General Motors Corp.*, 522 U.S. 222, 233 n. 5, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). For claim preclusion to apply, there must be (1) an identity of claims in the two actions; (2) a final judgment on the merits in the first action; and (3) identity or privity between the parties in the two actions. *See Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir.1997) (citing *Blonder–Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 323–24, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)).

The district court concluded that plaintiffs' facial Title VII claim is precluded by the 1979 district court decision in *ALPA v. United Air Lines, Inc.*, cited above. Plaintiffs in *ALPA*, the Air Line Pilots Association and individual named plaintiffs, claimed on behalf of a class of United flight attendants that United's 1977 weight policy discriminated against female flight attendants in violation of Title VII. Plaintiffs and United stipulated to class certification, and the district court certified a Rule 23(b)(2) class defined as

> all female flight attendants who are employed by United or who may become so employed in the future, and all former female flight attendants who were employed by United on or after October 14, 1971 and were suspended, removed from

service, or terminated by United for failure to meet United's flight attendant weight standards.

*Id.* at 609. Notice to current employees was accomplished by placing the notice in their employee boxes. Notice to former employees was attempted by sending it to their last-known addresses. Because the class was certified under Rule 23(b)(2), plaintiffs could not opt out of the class.

The district court in *ALPA* found that United's weight standards were not facially discriminatory, *see* 26 F.E.P. Cases at 615, 618, but that United had discriminated in applying those standards. *See id.* at 621–22. The court enjoined United from discriminating on the basis of sex in enforcing its weight standards, and it ordered reinstatement, back pay, and seniority credit for female flight attendants who had suffered discrimination. *See id.* at 626. The court wrote:

> United is free to continue using the flight attendant weight standards promulgated by United in May 1977. *Nothing in the court's decision or order is intended to pass upon the validity of any other weight standard for male or female flight attendants that United might adopt in the future.* ... United's current weight standards for male and female flight attendants are valid, ... United is not prohibited from adopting other standards, and ... the validity of any other standard has not been determined.

*Id.* at 626 (emphasis added).

After entry of judgment and while cross-appeals were still available, the parties settled the litigation. For their part, plaintiffs agreed not to appeal the district court's holding that the 1977 weight policy

---

**4.** Rather than using the terms "res judicata" and "collateral estoppel," the Supreme Court has generally used the terms "claim preclusion" and "issue preclusion." *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). "Claim preclusion" refers to the preclusive effect of a judgment in foreclosing relitigation of claims that were raised or should have been raised in earlier litigation, and "issue preclusion" refers to the preclusive effect of a judgment in foreclosing relitigation of issues that have been actually and necessarily decided in earlier litigation. *See id.*

was not facially discriminatory. For its part, United agreed to alter its weight charts by slightly increasing the weight limits and agreed not to appeal the district court's decision that United had discriminated in administering the weight policy. The terms of the settlement were described in a letter to the district court,[5] but the court was never asked to approve the settlement, as it would have been required to do under Rule 23(e) if the parties had entered into the same settlement prior to entry of judgment.

■ For several reasons, the district court in this case erred in giving claim preclusive effect to the *ALPA* judgment. First, the plaintiffs in this suit assert claims based on alleged Title VII violations arising after 1980. A claim arising after the date of an earlier judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis for the earlier claim. *See Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) ("While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."). Because the judgment in *ALPA* was entered in 1979, under *Lawlor* it cannot preclude claims based on events occurring after that date. *See id.; see also International Techs. Consultants, Inc. v. Pilkington, PLC,* 137 F.3d 1382, 1388 (9th Cir.1998) ("By winning the first action, the defendants 'did not acquire immunity in perpetuity from the antitrust laws.' ").

■ Second, plaintiffs' Title VII claim is based on a different weight policy from that challenged in *ALPA*. The central criterion in determining whether there is an identity of claims between the first and second adjudications is "whether the two suits arise out of the same transactional nucleus of facts." *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201–02 (9th Cir.1982) (setting forth test for identity of claims); *see also Hawaiian Tel. Co. v. Public Utils. Comm'n,* 827 F.2d 1264 (9th Cir.1987). Recognizing the possibility of litigation over a new weight policy, the district court in *ALPA* explicitly stated that it was not passing on the validity of any weight standards United might adopt in the future. Because United changed its weight tables and weight policy in 1980 as part of the post-judgment settlement, we hold that plaintiffs' claims in this case do not arise from the "same transactional nucleus of facts" underlying the claims in *ALPA*.

■ Third, notice in *ALPA* was not sufficient under Rule 23 to preclude monetary claims in later suits, for the class in *ALPA* was certified and given notice as a Rule 23(b)(2) "injunction" class action. The present suit, by contrast, is a Rule 23(b)(3) "damages" class action. Rule 23(c)(2) requires a higher standard of notice for a Rule 23(b)(3) class action, under which individual notice must be provided to "all members who can be identified through reasonable effort." *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Further, all potential members in a Rule 23(b)(3) class must be allowed to opt out of the class. In a Rule 23(b)(2) class action, by contrast, there is no requirement for individualized notice beyond that required by due process, and class members are not allowed to opt out. We are unable to determine on the record before us whether the notice given in *ALPA* was distributed to all class members who would have been entitled to notice of a Rule 23(b)(3) class action.

5. After the district court entered its order and judgment in *ALPA,* counsel for the plaintiff class wrote to the court "to confirm that ... neither side will appeal from any Order, Decision or Judgment heretofore issued by the Court[.]" A subsequent letter from class counsel stated, inter alia: "United has agreed to revise its flight attendant weight program, effective February 1, 1980. For the information of the Court, a copy of the new program is annexed hereto[.]"

However, we do know that class members in *ALPA* could not opt out of the class. Under *Eisen*, class members in a Rule 23(b)(3) class may be bound to the result of that action only if the notice and opt-out requirements applicable to Rule 23(b)(3) actions are satisfied. Because *ALPA* did not satisfy the requirements applicable to a Rule 23(b)(3) class action, *ALPA* cannot preclude the Rule 23(b)(3) class action in this case.

■ Fourth, to the degree that United seeks to rely on the post-judgment settlement in *ALPA*, we need only point out that the settlement is not incorporated into a judgment and therefore cannot have preclusive effect. *See Hydranautics v. Film-Tec Corp.*, 204 F.3d 880, 885 (9th Cir.2000). But even if it were a judgment, we cannot know whether it sufficiently protected the interests of the unnamed class members as that class then existed. A class action settlement can be approved and entered as a judgment only after a proceeding under Rule 23(e) at which unnamed class members are invited to express their opinions of the proposed settlement. Such a proceeding, often called a "fairness hearing," is designed to protect the unnamed members of the class against the misjudgment (and, occasionally, the self-interest) of the named plaintiffs and class attorneys. We are simply not allowed to give preclusive effect to a post-judgment settlement that was never subjected to the scrutiny contemplated by Rule 23(e) and never entered as a judgment.

■ Finally, we note that the terms of the settlement in *ALPA* appear not to protect the interests of flight attendants, such as plaintiffs in this case, who might later have been subjected to discipline for failing to comply with United's post-settlement weight restrictions.[6] The class representatives in *ALPA* failed to appeal the district court's decision that United's weight policy did not facially discriminate on the basis of sex. They elected, instead, to accept reinstatement and back pay for the members of the class who had been subjected to discriminatory application of the 1977 weight policy. Female flight attendants who were then employed and had not previously been adversely affected by the weight limits, but who might have been so affected in the future, had an interest in appealing the district court's order on the legality of United's policy. Those flight attendants had no interest in obtaining reinstatement and back pay. Similarly, women not then employed (but later hired) as flight attendants by United had no interest in back pay or reinstatement. Consequently, when the class representatives chose not to appeal the adverse ruling on the facial validity of the weight policy, they abandoned any representation of the interests of those present and potential future class members in order to protect present class members seeking back pay and reinstatement.[7] *See Tice v. American Airlines*, 162 F.3d 966, 969 (7th Cir.1999), *cert. denied*, —— U.S. ——, 119 S.Ct. 2395, 144 L.Ed.2d 795 (1999) (refusing to give preclusive effect to prior class action be-

6. In response to plaintiffs' argument that the class members have changed over the 20 years since the *ALPA* decision, the district court noted that the class certified in *ALPA* included all future flight attendants and cited *NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 741 (9th Cir.1984). We stated in *NAACP v. Los Angeles* that "[a] judgment on behalf of a class binds all persons belonging to the class and all those who subsequently come into the class." *Id.* But in that case the plaintiffs did not assert that they had been inadequately represented by the class representatives in the earlier action. *See id.* Concerns about the adequacy of representation

are heightened where the first action was a class action in which the plaintiffs in the subsequent action were unnamed, absent members. *See Hiser v. Franklin*, 94 F.3d 1287, 1293 (9th Cir.1996).

7. Named plaintiffs Leslie Frank, Pat Parnell, Carole Kirk, Joan Balla Weaver, and Donna Durkin had been employed by United for several years prior to the *ALPA* decision, but there is no evidence that they benefitted from the ALPA settlement, received notice of the settlement, or had an opportunity to object to the terms of the settlement.

cause plaintiffs had been too young to join in earlier litigation and their interests had diverged from those of the earlier class representatives insofar as younger pilots would benefit from age discrimination against older pilots); *Rutherford v. City of Cleveland,* 137 F.3d 905, 910 (6th Cir.1998) (holding decision to abandon opposition to consent decree governing hiring in exchange for amendment to consent decree governing promotion demonstrated failure to adequately represent interests of applicants); *Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir.1973) (holding failure to appeal denial of retroactive relief constituted inadequate representation). Because the interests of the plaintiff class in this suit were not adequately represented by the plaintiffs in *ALPA,* we cannot give preclusive effect in this suit to the post-judgment settlement in *ALPA.*

United contends in a two-sentence footnote in its brief to this court that even if plaintiffs' challenge to United's weight policy is not barred by claim preclusion, it is barred by issue preclusion. United is correct in stating that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). But the requirements of identity of parties, identity of the factual claim or issue, adequate notice, and adequate representation apply to both claim and issue preclusion. *See Richards v. Jefferson County, Ala.,* 517 U.S. 793, 800–01, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) (setting forth due process requirements for granting prior judgment preclusive effect); *Hansberry v. Lee,* 311 U.S. 32, 42–43, 61 S.Ct. 115, 85 L.Ed. 22 (1940) (same). The particulars of those requirements are different in claim preclusion and issue preclusion, but the underlying ideas are substantially the same. Because United does not and, indeed, could not, seriously argue that issue preclusion applies on the facts of this case, we think it unnecessary to analyze the question at length.

We therefore proceed to the merits of plaintiffs' claims.

## IV

Title VII makes it unlawful "to discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). Courts have recognized two bases on which plaintiffs may proceed: disparate treatment and disparate impact. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Disparate treatment arises when an employer "treats some people less favorably than others because of their ... sex." *Id.* Disparate impact arises when an employer's practice is "facially neutral ... but ... in fact fall[s] more harshly on one group than another." *Id.* Disparate treatment is permissible under Title VII only if justified as a bona fide occupational qualification ("BFOQ"). A BFOQ is a qualification that is reasonably necessary to the normal operation or essence of an employer's business. *See* 42 U.S.C. § 2000e–2.

An employer's policy amounts to disparate treatment if it treats men and women differently on its face. For example, in *UAW v. Johnson Controls,* 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991), defendant Johnson Controls barred fertile women, but not fertile men, from jobs entailing high levels of lead exposure. The Court concluded this was disparate treatment: "Johnson Controls' policy is not neutral because it does not apply to the reproductive capacity of the company's male employees in the same way as it applies to that of the females." *Id.* at 199–200, 111 S.Ct. 1196. The Court has made it clear that such an "explicit gender-based policy is sex discrimination under § 703(a) [of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) ] and thus

may be defended only as a BFOQ." *Id.* at 200, 111 S.Ct. 1196.

Similarly, in *Healey v. Southwood Psychiatric Hosp.,* 78 F.3d 128 (3d Cir.1996), defendant Southwood Psychiatric Hospital explicitly treated men and women differently in scheduling its employees' shifts. The court held that "Southwood's gender-based policy is not a pretext for discrimination—it is per se intentional discrimination." *Id.* at 131. "When open and explicit use of gender is employed . . . the systematic discrimination is in effect 'admitted' by the employer, and the case will turn on whether such overt disparate treatment is for some reason justified under Title VII. A justification for overt discrimination may exist if the disparate treatment is . . . based on a BFOQ." *Id.* at 132. The court in *Healey* held that facial discrimination was permissible as a BFOQ because staffing both males and females on all shifts was necessary to provide the therapeutic care that was the "essence" of the hospital's business. *See id.* at 132–33.

■ We view plaintiffs' case as analytically indistinguishable from *Johnson Controls* and *Healey.* The uncontroverted evidence shows that United chose weight maximums for women that generally corresponded to the medium frame category of MetLife's Height and Weight Tables. By contrast, the maximums for men generally corresponded to MetLife's large frame category. The bias against female flight attendants infected United's weight maxi-

mums for all age groups.[8] Because of this consistent difference in treatment of women and men, we conclude that United's weight policy between 1980 and 1994 was facially discriminatory.[9]

On its face, United's weight policy "applie[d] less favorably to one gender." *Gerdom v. Continental Airlines,* 692 F.2d 602, 608 (9th Cir.1982) (en banc). Under United's policy, men could generally weigh as much as large-framed men whether they were large-framed or not, while women could generally not weigh more than medium-framed women. As we held in *Gerdom,* "[w]here a claim of discriminatory treatment is based upon a policy which on its face applies less favorably to one gender . . . a plaintiff need not otherwise establish the presence of discriminatory intent." *Id.*

■ United defends its weight tables as permissible "grooming" or appearance standards. It is true that not all sex-differentiated appearance standards constitute disparate treatment that must be justified under Title VII as BFOQs. An appearance standard that imposes different but essentially equal burdens on men and women is not disparate treatment. For example, in *Fountain v. Safeway Stores, Inc.,* 555 F.2d 753 (9th Cir.1977), we held that a store may impose different hair length requirements on men and women, and may require men but not women to wear neckties. As we wrote in

---

**8.** The weight maximums that applied to female flight attendants under age 34 all fell within MetLife's range for medium-framed women. By contrast, the weight maximums that applied to males under age 34 all fell within MetLife's range for large-framed men. The weight maximums for female flight attendants between 35 and 44 straddled the medium and large frame categories for women, while the weight maximums for male flight attendants between the same ages fell exclusively in the large frame category for men. Female flight attendants between 45 and 54 were subjected to weight maximums that fell barely into the large frame category for women. These maximums never exceeded the top of the medium frame range for women by more than three pounds. Their male counterparts the same age were subjected to maximums at the upper end and beyond the upper end of MetLife's large frame range for men. These maximums exceeded the maximum weight for medium frames for men by anywhere between 4 and 17 pounds; for men 5'11" or taller, the maximums exceeded MetLife's large frame range for men.

**9.** Plaintiffs also make a disparate impact challenge to the weight maximums. Because we hold that plaintiffs are entitled to summary judgment on their disparate treatment claim, we do not reach the merits of their disparate impact claim.

that case, "regulations promulgated by employers which require male employees to conform to different grooming and dress standards than female employees is not sex discrimination within the meaning of Title VII." *Id.* at 754.

We need not decide whether a rule or regulation that compels individuals to change or modify their physical structure or composition, as opposed to simply presenting themselves in a neat or acceptable manner, qualifies as an appearance standard. Even if United's weight rules constituted an appearance standard, they would still be invalid. A sex-differentiated appearance standard that imposes unequal burdens on men and women is disparate treatment that must be justified as a BFOQ. Thus, an employer can require all employees to wear sex-differentiated uniforms, but it cannot require only female employees to wear uniforms. *See Carroll v. Talman Fed. Sav. & Loan Ass'n of Chicago,* 604 F.2d 1028 (7th Cir.1979). An airline can require all flight attendants to wear contacts instead of glasses, but it cannot require only its female flight attendants to do so. *See Laffey v. Northwest Airlines, Inc.,* 366 F.Supp. 763 (D.D.C.1973); *see also* Nadine Taub, *Keeping Women in Their Place: Stereotyping Per Se as a Form of Employment Discrimination,* 21 B.C. L.Rev. 345, 387 (1980).

We also need not consider whether separate weight standards for men and women in themselves constitute discriminatory treatment under *Johnson Controls.* Even assuming that United may impose different weight standards on female and male flight attendants, United may not impose different *and more burdensome* weight standards without justifying those standards as BFOQs.

United is thus entitled to use facially discriminatory weight charts only if it can show that the difference in treatment between female and male flight attendants is justified as a BFOQ. *See Johnson Controls,* 499 U.S. at 200, 111 S.Ct. 1196; *Healey,* 78 F.3d at 131. The burden is on United to show that its weight policy fits in this "extremely narrow exception to the general prohibition of discrimination on the basis of sex." *Dothard v. Rawlinson,* 433 U.S. 321, 334, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). To escape summary judgment, United must raise a genuine issue as to whether its discriminatory weight maximums are "reasonably necessary" to the "normal operation" of its "particular business," and that they concern job-related skills and aptitudes. *Johnson Controls,* 499 U.S. at 187, 111 S.Ct. 1196; 42 U.S.C. § 2000e–2(e)(1).

United provided no evidence that its facially discriminatory weight standard is a BFOQ. United made no showing that having disproportionately thinner female than male flight attendants bears a relation to flight attendants' ability to greet passengers, push carts, move luggage, and, perhaps most important, provide physical assistance in emergencies. The only evidence in the record is to the contrary. Far from being "reasonably necessary" to the "normal operation" of United's business, the evidence suggests that, if anything, United's discriminatory weight requirements may have inhibited the job performance of female flight attendants. We therefore reverse the decision of the district court and hold that because United's policy of applying medium-frame weight maximums to female flight attendants and large-frame weight maximums to male flight attendants is facially discriminatory and not justified as a BFOQ, plaintiffs are entitled to summary judgment on their disparate treatment class claim.[10]

## V

The ADEA prohibits employers from discriminating against "any indi-

---

10. We also reverse the district court's implicit denial of summary judgment on plaintiffs'

corresponding discrimination claim under FEHA.

vidual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). The district court correctly concluded that a disparate treatment class claim is not available to plaintiffs because United's weight policy discriminated on the basis of sex and weight, not on the basis of age. An employer does not violate the ADEA by discriminating based on a factor that is merely empirically correlated with age. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609–11, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *Ellis v. United Airlines, Inc.,* 73 F.3d 999 (10th Cir.1996) (concluding that United's weight requirement did not violate ADEA).

■ Plaintiffs should, however, be permitted to go forward with their age discrimination class claim under a disparate impact theory.[11] In its order of February 26, 1997, the district court noted that it had previously found, on August 16, 1995, that plaintiffs' age-based disparate impact claim presented triable issues of fact. But the district court concluded that the Supreme Court's decision in *Hazen,* as interpreted by the Tenth Circuit in *Ellis* in 1996, foreclosed a disparate impact claim in an ADEA case. We have since squarely decided that a disparate impact claim is cognizable in an ADEA case. *See Arnett v. California Pub. Employees Retirement Sys.,* 179 F.3d 690, 696 (9th Cir.1999) *vacated and remanded on other grounds,* —— U.S. ——, 120 S.Ct. 930, 145 L.Ed.2d 807 (2000). The Supreme Court vacated our decision in *Arnett* and remanded for further consideration in light of *Kimel v. Florida Bd. of Regents,* —— U.S. ——, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), in which the Court held that the ADEA does not abrogate the Eleventh Amendment. The

Eleventh Amendment issue is irrelevant to a case, such as this one, in which a private rather than state entity is a defendant, and the Court's vacation of our decision has no bearing on the correctness of our conclusion that a disparate impact claim is cognizable under the ADEA. We see no reason to depart from our conclusion in *Arnett* and we again hold that a disparate impact claim is cognizable under the ADEA. *See also EEOC v. Local 350, Plumbers and Pipefitters,* 998 F.2d 641, 648 n. 2 (9th Cir.1992). We therefore conclude that plaintiffs should be allowed to proceed with their disparate impact class claim.[12]

## VI

The district court concluded that none of the named plaintiffs presented viable individual claims of discrimination under Title VII, the ADEA, the ADA, and FEHA. In light of our holding on the class claim under Title VII, we reverse summary judgment for defendant on named plaintiffs' individual claims of sex discrimination. Similarly, in light of our holding on the class claim under the ADEA, we reverse summary judgment on named plaintiffs' individual claims of age discrimination. On remand, the district court should reassess their individual claims under Title VII and the ADEA and their corresponding individual claims under FEHA in light of this opinion.

■ We affirm the district court's decision granting summary judgment for United on named plaintiffs' individual claims under the ADA and their corresponding claims under FEHA. The district court correctly concluded that none of the named plaintiffs presented evidence to make a prima facie case that their eating

---

**11.** United contends that plaintiffs have waived their ADEA class claims of age discrimination on appeal. We disagree. An appellant ordinarily must raise an argument in its opening brief on appeal in order to preserve it for our review. *See, e.g., Officers for Justice v. Civil Serv. Comm'n,* 979 F.2d 721, 726 (9th Cir.

1992). Plaintiffs have satisfied this standard in sections VI.C.5.e and VI.D of their opening brief.

**12.** We also reverse the district court's implicit dismissal of plaintiffs' corresponding age discrimination claim under FEHA.

disorders "substantially limited" a major life activity and were therefore disabilities within the meaning of the ADA. *See Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 2169, 144 L.Ed.2d 518 (1999). A major life activity is a function such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2. While eating disorders can substantially limit major life activities, plaintiffs have not presented evidence that *their* eating disorders have that effect.

With respect to the named plaintiffs' other asserted disabilities, the district court correctly concluded that none of the named plaintiffs had exhausted their administrative remedies by filing charges with the EEOC or with California's Department of Fair Employment and Housing. Named plaintiffs did file charges claiming disability discrimination based on obesity, but obesity is not like or reasonably related to other conditions, such as cancer, from which plaintiffs allegedly suffer and on which they base their other individual charges of discrimination. Named plaintiffs have therefore not exhausted their administrative remedies with respect to these conditions. *See Yamaguchi v. United States Dep't of the Air Force,* 109 F.3d 1475, 1480 (9th Cir.1997).

## VII

Because the district court should have granted summary judgment to plaintiffs on their Title VII disparate treatment class claim and should have denied United's motion for summary judgment on plaintiffs' disparate impact ADEA class claim, we reverse the district court's decertification of the class and denial of plaintiffs' application for an award of costs.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of sum-

mary judgment to defendant on plaintiffs' disparate treatment class claim under Title VII, and we **REVERSE** its denial of plaintiffs' motion for summary judgment on that claim. We **AFFIRM** the district court's grant of summary judgment on plaintiffs' disparate treatment class claim under the ADEA, and we **REVERSE** its grant of summary judgment to defendant on plaintiffs' disparate impact class claim under the ADEA. We similarly **REVERSE** and **AFFIRM** the district court's rulings on plaintiffs' class claims under FEHA that correspond to their class claims under Title VII and the ADEA. We **REVERSE** the district court's grant of summary judgment to defendant on plaintiffs' individual claims under Title VII, the ADEA, and corresponding claims under FEHA. We **AFFIRM** the district court's grant of summary judgment to defendant on plaintiffs' individual claims under the ADA and corresponding claims ·under FEHA. We **REVERSE** the district court's class decertification and denial of plaintiffs' application for award of costs in the district court.

**REVERSED** in part, **AFFIRMED** in part, and **REMANDED** for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

I fully concur in the court's affirmance of the district court's summary judgment for United on the plaintiffs' "disparate treatment" claims under the Age Discrimination in Employment Act and individual claims under the Americans with Disabilities Act. I must respectfully dissent, however, from the reversal of the district court's grant of summary judgment for United on the plaintiffs' remaining claims under Title VII and the Age Discrimination in Employment Act.[1]

1. I shall not separately address the plaintiffs' claims under the California Fair Employment

and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900–12996, but would affirm the district

## I

Although the majority deploys a raft of arguments in the alternative to support its holding that the plaintiffs' facial attack on United's weight policy is not precluded by the judgment entered in *Air Line Pilots Association, International v. United Air Lines, Inc. ("ALPA")*, 26 F.E.P. Cases 607, 1979 WL 34 (E.D.N.Y.1979), none of those arguments is compelling—indeed, some of them conflict fundamentally with preclusion doctrine, in my view.[2]

## A

The majority's first two arguments against granting the *ALPA* judgment preclusive effect in this litigation are that the relevant claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, did not "arise" until after 1979 (i.e., after that judgment was entered), *supra* at 850, and that "the claim is based on a different weight policy from that challenged in *ALPA*," *supra* at 851.

As an initial matter, these two contentions seem to me to be part and parcel of the same argument. The claim did not "arise" before 1979 either because the *ALPA* plaintiffs did not think (or bother) to make it before then or because the distinct factual circumstances—United's implementation of its new weight policy— did not obtain before then. If the majority's reference to the "arising" of the plaintiffs' claim is captured by the second possible reading, the majority's first two arguments are logically indistinguishable.

It is plain that the first possibility cannot militate against giving the *ALPA* judgment preclusive effect, notwithstanding the decontextualized dictum from *Internation-*

*al Technologies Consultants, Inc. v. Pilkington, PLC,* 137 F.3d 1382, 1388 (9th Cir.1998), that the majority quotes for the overstated proposition that prior favorable judgments do not "preclude claims based on events occurring [there]after." *See supra* at 851 (" 'By winning the first action, the defendants "did not acquire immunity in perpetuity from the antitrust laws." ' "). As the very purpose of preclusion doctrine "is to protect a defendant from being worn down by a plaintiff who sues him over and over again for the same allegedly wrongful conduct," *Marrese v. American Acad. of Orthopaedic Surgeons,* 726 F.2d 1150, 1152 (7th Cir.1984), *rev'd on other grounds,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), someone who has once successfully defended his allegedly obnoxious behavior in court is indeed presumptively immune from suit thereon (by the same parties) though he should persist in his offensive behavior thereafter. *Cf. Go–Video, Inc. v. Matsushita Elec. Indus. Co. (In re Dual–Deck Video Cassette Recorder Antitrust Litig.),* 11 F.3d 1460, 1464 (9th Cir.1993) (giving prior judgment preclusive effect because the subsequent claim appeared to rely on the misplaced theory "that every day is a new day, so doing the same thing today as yesterday is distinct from what was done yesterday.").

It is conceivable, of course, that United's new weight policy might avoid the preclusive effect of the *ALPA* judgment even though the mere passage of time could not. "Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves … comprise a transaction which may be made the basis of a second action not precluded by the first." Restatement 2d of Judgments § 24 cmt. a; *see Costan-*

---

court's judgment thereon for the reasons that follow.

**2.** The majority suggests that the issue is whether the "post-judgment settlement," as opposed to the actual district court judgment in *ALPA*, precludes these claims. *See supra* at 852 (rejecting United's argument "to the degree that [it] seeks to rely on the post-judg-

ment settlement in *ALPA*" because the settlement was not incorporated into the district court's judgment and did not protect the interests of absent class members). The post-judgment settlement is not relevant to the preclusion issue here. It is undisputed that the district court tendered a final judgment in *ALPA*, and it is the preclusive effect of that judgment that is before us.

*tini v. Trans World Airlines,* 681 F.2d 1199, 1202 (9th Cir.1982) (noting that "whether the two suits arise out of the same transactional nucleus of facts" is "the most important" criterion in determining whether the judgment in an earlier lawsuit precludes litigation of a second). The majority summarily concludes that United's new weight policy is in fact a distinct transaction because it was "part of the post-judgment settlement" reached after *ALPA.* Like the district court, I think it plain that an across-the-board increase in maximum permissible weights and relaxed standards for older flight attendants does not amount to a "[m]aterial operative fact[ ]" with respect to an allegation that those maxima are sexually discriminatory. In order for uniform, absolute increases— which is essentially all that is "new" on the face of United's post–1979 weight policy— to be relevant to a discrimination claim, the margin of the increase itself must be more or less accommodating to one gender than another. Such a claim has not been made in the course of this litigation and is not credible on its face. The lockstep increases in maximum permissible weights, in short, are no more material to the plain-

tiffs' cause of action than the possibility that the new policy was printed and circulated on a different color of paper.

The fact that the plaintiffs' Title VII claims in this case arise from United's new weight policy rather than its predecessor is not material to a claim of sex discrimination because the new policy does not differ from the old one in any way that is itself material to the plaintiffs' claim. Thus the fact that the policy was changed after the *ALPA* judgment cannot alone defeat that judgment's preclusive effect. *Cf. EEOC v. American Airlines, Inc.,* 48 F.3d 164, 169 (5th Cir.1995) ("It is not enough to avoid the preclusive effect of the prior determination ... to show merely a change in facts: a change must have occurred in facts that ... were of controlling significance."). To hold otherwise, as the court does today, cabins preclusion doctrine so narrowly as to render it useless, for a plaintiff hoping to evade it might do so simply by emphasizing irrelevant distinctions in his pleadings.[3]

### B

The majority's third argument against granting preclusive effect to the judgment

---

**3.** The plaintiffs take some pains to argue that this lawsuit cannot be barred by "claim preclusion," as the district court held, as distinct from "issue preclusion." Even if that were so, "we may affirm the district court's decision based on any reason finding support in the record," *Welch v. Fritz,* 909 F.2d 1330, 1330 (9th Cir.1990), and it is apparent that "issue preclusion" would suffice to preclude the present lawsuit. This is so notwithstanding the plaintiffs' attempt to distinguish the judgment in *ALPA* as being limited to a disparate impact theory rather than the disparate treatment theory that is at issue in this case. It is an exercise in fruitless abstractions to hypothesize that one could recover under a disparate treatment theory relying on evidence of a pattern or practice after failing to recover under a disparate impact theory. *Cf. Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

    The distinguishing features of the factual issues that typically dominate in disparate impact cases do not imply that the ultimate legal issue is different than in cases where

disparate treatment analysis is used. Nor do we think it is appropriate to hold a defendant liable for unintentional discrimination on the basis of less evidence than is required to prove intentional discrimination. Rather, the necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination.

*Id.* at 987, 108 S.Ct. 2777 (citation omitted).

    Furthermore, plaintiffs' suggestion that the judgment in *ALPA* disposed of only a disparate impact claim and not a disparate treatment claim is unsupported by anything but a citation to United's statement that "Judge Pratt conducted what was indisputably a disparate impact analysis." Judge Pratt may well have recognized that conducting a disparate impact analysis on the type of facial challenge there at issue disposed of any disparate treatment claim as well. This recognition would explain the plaintiff's apparent contention in this case that Judge Pratt did not effectively distinguish between disparate impact and disparate treatment claims.

entered in *ALPA* is that the procedural protections for absent class members in that litigation were insufficient to bar the individual claims of those absent class members for monetary relief. In particular, the majority notes that the *ALPA* court certified the plaintiff class in that case under Fed.R.Civ.P. 23(b)(2), which applies to actions predominantly for declaratory and injunctive relief and does not require the same level of procedural protections for absent class members that a "damages" action brought by a class certified under Fed.R.Civ.P. 23(b)(3) has. *See supra* at 851. In a class action under Rule 23(b)(3), "the court [must] direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," and this notice must indicate that members of the class may opt out of the litigation to avoid being bound by its result. Fed.R.Civ.P. 23(c)(2); *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The Supreme Court has declared that the protections mandated for classes certified under Rule 23(b)(3) are "an unambiguous requirement of Rule 23" in order "to insure that the judgment ... w[ill] bind all class members who did not request exclusion from the suit." *Id.* at 176, 94 S.Ct. 2140. From the Court's observation, the majority apparently infers that only judgments relating to classes certified under Rule 23(b)(3) can have preclusive effect—at least with respect to claims for damages. There are two problems with the majority's inference.

The first problem is that the inference is logically untenable and manifestly unfounded. Strictly as a matter of logic, the mere fact that the critical notice and opt-out protections are mandatory for classes certified under Rule 23(b)(3) does not mean that the same protections were unavailable to a class certified under Rule 23(b)(2). Indeed, four years before it entered judgment in *ALPA,* the Federal District Court for the Eastern District of New York had held that protections entailed by Rule 23(b)(3) certification should be extended to classes certified under Rule 23(b)(2) when, as in the *ALPA* litigation, the plaintiffs seek significant monetary as well as equitable relief. *See Gates v. Dalton,* 67 F.R.D. 621, 632–33 (E.D.N.Y.1975) (holding that it was immaterial whether the plaintiff class was certified under Rule 23(b)(2) or Rule 23(b)(3), because, "in view of the reimbursement claim, notice to the class and an opportunity to 'opt-out' must be provided in any event. That, as noted, is the only real practical difference between the two designations. . . ."). We and other circuits have also recognized that a judgment entered against a class certified under Rule 23(b)(2) may satisfy the demands of due process and bind the members of that class as though it had been certified under Rule 23(b)(3) and lost "a class action suit for money damages." *Crawford v. Honig,* 37 F.3d 485, 487 n. 2 (9th Cir.1994) (noting that the case "was a class action for injunctive relief certified under Fed.R.Civ.P. 23(b)(2), which does not require notice or permit members to opt out, although a court in its discretion may provide for an opt-out or notice."); *see Fontana v. Elrod,* 826 F.2d 729, 732 (7th Cir.1987) (acknowledging that, "when monetary damages are sought in a(b)(2) class action, 'due process does require notice before the individual monetary claims of absent class members may be barred.' "); *Johnson v. General Motors Corp.,* 598 F.2d 432, 437 (5th Cir.1979) ("[W]e have previously suggested that when both monetary and injunctive relief are sought in an action certified under Rule 23(b)(2), notice may be mandatory if absent class members are to be bound.").

It is of course true that the members of the plaintiff class in this case may not have enjoyed adequate protections as members of the class certified under Rule 23(b)(2) in *ALPA,* notwithstanding the fact that the *ALPA* court could very well have extended

such protections to them.[4] The fact that the plaintiffs *might* have been deprived of their due process rights to notice and the opportunity to opt-out, however, cannot bar the normal preclusive effect of the judgment entered in *ALPA*. This is the second problem with the majority's position. We are not in the habit of presuming violations of due process, especially when, as here, the parties supposedly suffering such a violation have never so much as alleged the fact thereof. *See, e.g., Park v. California,* 202 F.3d 1146, 1154 (9th Cir.2000) (rejecting a habeas petitioner's due process claim because he "failed to fulfill his burden adequately to allege and demonstrate . . . a violation of due process" despite having both specified the trial court's error and cited "to the Fifth, Ninth, and Fourteenth Amendments"); *Howlett v. Salish and Kootenai Tribes of the Flathead Reservation,* 529 F.2d 233, 240 (9th Cir.1976) (noting that the plaintiffs bore the burden of demonstrating a violation of due process). Hence, even if it were within the power of this court to establish independently that the *ALPA* court did not require adequate notice to the members of the plaintiff class in that litigation, the plaintiffs here cannot benefit from this discovery in light of their failure to carry the burden of demonstrating (or even alleging) as much themselves.

### C

The majority finally notes that the judgment entered in *ALPA* cannot have preclusive effect because the named plaintiffs in *ALPA* settled their claims against United with reinstatement and an award of back pay rather than appealing the *ALPA* court's adverse judgment, thus proving that the named plaintiffs were insufficiently representative of the absent class members who had not yet been harmed by the weight policy.[5] *See supra* at 852–53 ("The class representatives in *ALPA* failed to appeal the district court's decision that United's weight policy did not discriminate on the basis of sex."). The district court in this case held that the plaintiff class in *ALPA* included, as the *ALPA* court had indicated, all former, present, and future flight attendants at United and cited our decision in *NAACP v. Los Angeles Unified School District,* 750 F.2d 731, 741 (9th Cir.1984), for the proposition that class actions may bind even future members of the class. The majority declares *NAACP* inapplicable, because "the plaintiffs [in that case] did not assert that they had been inadequately represented by the class representatives in the earlier action." *Supra* at 852 n. 6.

The problem with the majority's handy point is that the plaintiffs in this case have

4. It bears noting at this juncture that whether these protections were appropriately extended does not depend on the experience of any particular member of the class, because the preclusive effect of a class action depends upon the adequacy of the entire notice scheme and not upon a determination of whether the member of the class to be precluded actually received notice. *See, e.g., Fontana,* 826 F.2d at 732 (" '[A]n absent class member will be bound by any judgment that is entered if appropriate notice is given, even though that individual never actually received notice.' ")(quoting 7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1789, at 253 (2d ed.1986)).

5. The majority also notes that the preclusive effect of the judgment in *ALPA* cannot be inferred from the fact that the new weight program was the result of a settlement between United and the plaintiff class in *ALPA*. *See supra* at 852 ("Fourth, to the degree that United seeks to rely on the post-judgment settlement in *ALPA,* we need only point out that the settlement is not incorporated into a judgment and therefore cannot have preclusive effect."). I see no need to address the validity of the majority's observation, for it is irrelevant that United's new weight program was the result of a settlement between the *ALPA* parties except insofar as it clearly establishes that the changes in United's weight policy could not possibly provide a distinct basis for suit (as those changes were merely *concessions* sought by the plaintiff class). As the changes to the weight program were immaterial to a Title VII claim on their face, the fact that they were the result of a settlement is neither here nor there.

also failed to assert that they were inadequately represented. To the extent that the majority infers the critical allegation from arguments made by the plaintiffs here, the majority ignores our previous admonition that "we will not second-guess a prior decision that counsel adequately represented a class" and our recognition that the burden is squarely on the plaintiffs to "present facts which indicate a lack of adequate representation." *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390–91 (9th Cir.1992). The plaintiffs have simply waived the "inadequate representation" argument here, and thus it too cannot strip the judgment in *ALPA* of its preclusive effect.

## D

For the foregoing reasons, I dissent from the majority's refusal to acknowledge that the *ALPA* judgment precludes the plaintiffs' facial attack of United's weight policy as unlawful sex discrimination under Title VII. I thus believe the majority errs in reaching the merits of the complex Title VII issue. I would only note here that the majority's purported grant of summary judgment for the plaintiffs is unsupportable. It relies on a "finding"—made for the first time here and on the basis of figures for the population at large when the plaintiff class is hardly drawn therefrom—that the evidence establishes that United's weight program is more burdensome for female flight attendants than male flight attendants. The majority's conclusion presses the envelope too far. *Cf. Gerdom v. Continental Airlines, Inc.*, 692 F.2d 602, 608 (9th Cir.1982) (Noting that "[t]he general principle is that the plaintiff has the initial burden of offering evidence which is sufficient to create an inference of *intentional* discrimination" and holding that evidence that a weight limit was applied *only to females* was sufficient therefor (emphasis added)).[6]

## II

While I concur in the majority's affirmance of the district court's summary judgment for United on the plaintiffs' claims under the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. §§ 621–634, insofar as those claims rest on a "disparate treatment" theory, I must dissent from the court's reversal of the district court's summary judgment insofar as the plaintiffs' claims rests on a "disparate impact" theory. Quite simply, the plaintiffs have waived this issue on appeal by failing to offer any argument whatsoever against the district court's decision.

There is no room for doubt that the district court granted summary judgment for United on the plaintiffs' disparate impact claims because it concluded that such claims are not cognizable under the ADEA after the Supreme Court's decision in *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). In reversing the district court, the majority contends that we have "squarely decided" since *Hazen* was handed down that a disparate impact claim is, in fact, cognizable in an ADEA case. *Supra* at 856. We have "squarely decided" this issue, however, only in the context of a case that is now a legal nullity. *See Arnett v. California Public Employees Retirement System,* 179 F.3d 690, 697 (9th Cir.1999), *vacated,* —— U.S. ——, 120 S.Ct. 930, 145 L.Ed.2d 807 (2000). The majority makes much of the fact that *Arnett* was vacated "on other grounds," *see supra* at 856 ("The Eleventh Amendment issue [on the basis of which the Supreme Court appears to have vacated *Arnett*] is irrelevant to a case[ ] such as this one . . . ."), but the majority's distinction does not alter the fact that *Arnett* is utterly devoid of legal force. *See, e.g., O'Connor v. Donaldson,* 422 U.S. 563, 577 n. 12, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives

**6.** As I would affirm the district court's summary judgment on the class claim under Title VII, I would also affirm the district court's summary judgment on individual claims.

that court's opinion of precedential effect...."); *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950) (noting that, when a decision is vacated, the path has been cleared "for future relitigation of the issues"). Indeed, we have rebuked litigants for attempting to resurrect vacated decisions on precisely the same logic. *See Durning v. Citibank, N.A.,* 950 F.2d 1419, 1424 n. 2 (9th Cir.1991) ("Although the Authority contends that the decision was 'vacated on other grounds,' we find that contention curious. A decision may be reversed on other grounds, but a decision that has been vacated has no precedential authority whatsoever."). I would require more than a citation to our defunct decision in *Arnett* before endorsing the conclusion that the district court erred.

That citation, however, is all there is on the issue. The only argument offered by the plaintiffs in opposition to the district court's summary judgment for United on their ADEA claims has nothing at all to do with the appropriateness of disparate impact theories and is instead limited to the all-but-conclusory statement that "the evidence establishes a genuine issue of intentional age discrimination." In addition to being entirely beside the point, the plaintiffs' "argument" is wholly insubstantial. Even with descriptions of and citations to a few items in the record to support their characterization of the evidence, the plaintiffs manage in the course of more than a hundred pages of briefing to fill less than two with their arguments relating to the ADEA.[7]

I think it somewhat curious to hold, solely on the strength of a perfunctory observation, *see supra* at 856 ("We see no reason to depart from our conclusion in *Arnett* ...."), that the district court erred in concluding that a disparate impact claim under the ADEA does not survive *Hazen.*

To do so without any relevant briefing on the issue is worse yet. Because the plaintiffs have manifestly waived their ADEA claims on appeal, I would affirm the district court's summary judgment for United on those claims.

### III

Because I cannot agree with the court's reversal of the summary judgment for United, I must also disagree with the reversal of the district court's decertification of the class and denial of plaintiffs' application for costs.

### A

The district court's failure to require notice of the decertification under Fed. R.Civ.P. 23(d)(2) was not an abuse of discretion, because obvious practical considerations militated strongly against requiring notice here. *See Bauman v. United States District Court,* 557 F.2d 650, 658 (9th Cir. 1977) (reviewing requirement of notice pursuant to Fed.R.Civ.P. 23(d)(2) for an abuse of discretion).

First, United had discontinued its weight program four years before the decertification of the class. The simple staleness of the class promised to render the typical unnamed member relatively difficult to locate.

Second, the number of individuals requiring notice would have been disproportionate to the benefits derived from notice. This is particularly true because the supposed benefit from the notice was that members of the class with individual claims were to be informed that their claims were tolled during the pendency of the class action and the claims thus tolled were exactly those that the court had already disposed of. *See Crown Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct.

---

7. If there were any lingering skepticism that the plaintiffs have abandoned their disparate impact claims under the ADEA, both the fact that the plaintiffs did not take exception in their reply brief to United's statement to this effect and the fact that the plaintiffs failed to alert us to this court's purportedly dispositive—and decidedly helpful—decision in *Arnett, see* Fed. R.App. P. 28(j), should put such skepticism to rest.

2392, 76 L.Ed.2d 628 (holding only that claims identical to those advanced in the putative class action are tolled during the pendency of the class certification).

### B

I respectfully disagree as well with the court's reversal of the district court's denial of the plaintiffs' application for costs, because the fact that the district court properly found the plaintiffs' claims to be meritless rendered the plaintiffs' request of an award entirely frivolous. *Cf. National Information Servs., Inc. v. TRW, Inc.,* 51 F.3d 1470, 1471 (9th Cir.1995) (noting that the "loser bears th[e] burden" of overcoming a presumption that costs will be awarded to the prevailing party in civil litigation under Fed.R.Civ.P. 54(d)).

### IV

I would affirm the district court's grant of summary judgment for United on the plaintiffs' Title VII, ADEA, and FEHA claims. Because the majority declines to do so on the strength of dubious arguments never made by the plaintiffs and authority lacking precedential force of any sort, I dissent from that part of the court's disposition. Moreover, because the district court correctly granted summary judgment for United, I dissent from the reversal of the district court's order decertifying the class and denying the plaintiffs' application for costs.

It may seem inappropriate in this day and age to have seemingly arbitrary weight limitations for employees (a proposition with which United seems no longer to disagree), but our anti-discrimination statutes and law of civil procedure rest on policies more diverse than the eradication of business practices that strike us as distasteful or unfair. Those policies include protecting to the extent practicable the flexibility of private enterprise to respond to the demands of the market and protecting individuals from endlessly rehearsing (at potentially crippling expense) their de-

fenses to allegations of unlawful conduct. In order to vindicate these other policies, the courts and Congress have drawn lines limiting what conduct is actionable and under what circumstances an employer may be called upon to defend his conduct. Because the majority ignores those lines, many of them well established, I concur in the court's opinion only in part and dissent as to the remainder.